No. 86,736

Eileen Ferguson, *Appellant*, v. State of Kansas, *Appellee*.
(78 P.3d 40)

Original opinion filed October 17, 2003.
Modified opinion filed November 12, 2003.

*Stephen M. Joseph*, of Joseph & Hollander, P.A., of Wichita, argued the cause and was on the briefs for appellant.

*Keith E. Schroeder*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BRAZIL, S.J.: A jury convicted petitioner Eileen Ferguson of arson in 1998 in Reno County Case No. 97 CR 207, after a fire destroyed the restaurant she had purchased. Ferguson filed a direct appeal of her conviction alleging, among other claims of error, that the information was jurisdictionally defective in that it failed to specifically set forth all the required elements of the crime of arson. The Court of Appeals affirmed her conviction after it found, under a post-*State v. Hall* analysis (*State v. Hall*, 246 Kan. 728, 793 P.2d 737 [1990]), that the information fairly advised Ferguson of the charges against her. (*State v. Ferguson*, No. 81,677, unpublished opinion filed March 17, 2000, *rev. denied* 269 Kan. 936 [2000]).

After exhausting her avenues for direct appeal, Ferguson collaterally attacked her sentence in a motion to vacate on the ground that she was deprived of her constitutional right to effective assistance of counsel at trial. One of the deficiencies alleged by Ferguson was that trial counsel rendered constitutionally ineffective assistance when he failed to timely move to dismiss or to vacate judgment based on the jurisdictionally defective information. The district court denied her motion to vacate. The Court of Appeals reversed the district court, holding that trial counsel's non-strategic failure to file a motion for arrest of judgment under a facially defective complaint constituted ineffective assistance of counsel per se.

This court granted review of the State's petition and Ferguson's cross-petition for review. This case presents us with the paradoxical situation where, on direct appeal, an appellate court held that a jurisdictionally defective information did not prejudice the defendant, but on collateral attack, another panel of that court held that trial counsel's failure to move to vacate on the basis of the jurisdictionally defective information resulted in prejudice to the defendant.

The procedural background of this case began after a jury convicted Ferguson of the arson of her restaurant, Sampler's. Ferguson filed a direct appeal, challenging: (1) jurisdiction under a defective complaint; (2) jury instruction No. 6; (3) the trial court's admission of certain evidence; and (4) the adequacy of the evidence supporting the verdict. The Court of Appeals determined that the questioned jury instruction was not clearly erroneous, that any erroneous admission of evidence was harmless in light of the overwhelming nature of evidence of Ferguson's guilt, and that sufficient evidence supported the jury verdict. In answer to Ferguson's allegation on direct appeal that the complaint was jurisdictionally defective in that it failed to state that her acts were done "knowingly" and "by means of fire or explosive," required elements of arson under K.S.A. 21-3718(a)(2), the Court of Appeals wrote:

"Defendant argues the information charging her with arson is jurisdictionally defective because it fails to state all the essential elements of a crime. Defendant argues that the conviction should be vacated. We disagree.

"The information charged the crime of arson, K.S.A. 21-3718, and stated that defendant feloniously and willfully damaged Sampler's with the intent to defraud an insurer or lien holder. As we understand, the information failed to allege that defendant's acts were done 'knowingly' and 'by means of fire or explosive,' which are elements listed in K.S.A. 21-3718.

"*State v. Hall*, 246 Kan. 728, 765, 793 P.2d 737 (1990), sets out the standard of review for allegations of defects in the information raised for the first time on appeal. *Hall* stated:

'Information defect challenges raised for the first time on appeal shall be reviewed by applying (1) the reasoning of K.S.A. 22-3201(4) complaint/information/indictment amendment cases as expressed in *State v. Switzer*, 244 Kan. 449, 769 P.2d 645 (1989), *State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1988), and *State v. Rasch*, 243 Kan. 495, 497, 758 P.2d 214 (1988), as that reasoning relates to jurisdiction and the substantial rights of the defendant; (2) the "common-sense" test of *State v. Wade*, 244 Kan. 136, 766 P.2d 811 (1989), and *State v. Micheaux*, 242 Kan. 192, 747 P.2d 784 (1987); and (3) the rationale of *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), *cert. denied* 429 U.S. 1099 (1977). Of paramount importance, we shall look to whether the claimed defect in the information has: (a) prejudiced the defendant in the preparation of his or her defense; (b) impaired in any way defendant's ability to plead the conviction in any subsequent prosecution; or (c) limited in any way defendant's substantial rights to a fair trial under the guarantees of the Sixth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights, § 10. If a defendant is able to establish a claim under either (a), (b), or (c), the defective information claim, raised for the first time on appeal, will be allowed.'

"The sufficiency of the information should be determined on the basis of practical rather than technical considerations, and the *Hall* court adopted a common sense approach. The court should give the information a liberal construction in favor of validity. *Hall*, 246 Kan. at 764.

"In both *State v. Waterberry*, 248 Kan. 169, 172, 804 P.2d 1000 (1991), and *State v. Kluge*, 25 Kan. App. 2d 461, 463, 966 P.2d 683 (1998), the court agreed essential allegations were omitted from complaints; however, the court concluded that a fair reading of the information properly advised the defendant of his or her charges.

"Unquestionably, defendant was not prejudiced by the challenged information. The information provided the name of the crime and the statute of the crime. The missing elements can be supplied by implication. Defendant received a thorough preliminary hearing setting out the allegations. There is no evidence to indicate that defendant was not fully aware of the charges against her and able to provide a defense, could not plead the conviction in any subsequent prosecution, or that the information violated her rights."

In Ferguson's direct appeal, the Court of Appeals applied the post-*Hall* analysis and concluded that a fair reading of the infor-

mation fairly advised Ferguson of the charges against her. Finding no reversible error, the Court of Appeals affirmed Ferguson's conviction. This court denied further review on June 13, 2000.

On June 19, 2000, Ferguson filed a motion in the district court to vacate her sentence pursuant to K.S.A. 60-1507, claiming she had been deprived of her constitutional right to effective assistance of counsel at trial. The district court summarized Ferguson's claims in regard to trial counsel's deficiencies as:

"(a) The Information did not charge her with a crime. Her attorney failed to move for dismissal of the Information under K.S.A. 22-3208 or to arrest judgment under K.S.A. 22-3502 on the ground that the Information did not charge a crime. She alleges that this failure was outside the range of professionally competent assistance of counsel, and that, had said counsel made the motion, the Court would have been compelled to grant the motion.

"(b) That her attorney failed to properly investigate the origin of the fire and failed to present expert testimony from an arson investigator at her trial. She contends that if her attorney had presented this type of testimony, the result of her trial probably would have been different, and that his failure to do so was outside the range of professionally competent assistance of counsel.

"(c) Further, that her trial attorney failed to properly investigate the financial condition of Eileen's, Inc., and to present expert testimony from an accountant at trial to demonstrate that the Sampler's Restaurant produced a positive cash flow and was profitable. She further contends that if her attorney had presented this type of testimony, the result of her trial probably would have been different, and that his failure to do so was outside the range of professionally competent assistance of counsel."

The district court denied her motion to vacate after conducting an evidentiary hearing. At the hearing, Ferguson offered the testimony of five witnesses in support of her contention that she had been denied effective assistance of counsel during her trial. Those witnesses were (1) Jack Focht, an attorney; (2) Francis Meisenheimer, Ferguson's trial attorney; (3) Dr. John D. De Haan, expert criminalist in the field of arson investigation; (4) John Evans, Ferguson's public accountant; and (5) David Mitchell, certified public accountant.

At the evidentiary hearing, Jack Focht, a practicing attorney for over 40 years, testified that Meisenheimer did not render reasonably competent representation when he failed to file a motion to arrest judgment. In Focht's opinion, Meisenheimer's failure to file

a motion to arrest judgment based on the defective information resulted in prejudice to Ferguson on appeal. Focht stated that, had Meisenheimer filed such a motion, "she would not be seated here today as a convicted person, but would be free."

Meisenheimer testified that he recognized prior to the trial that both the complaint and information "omitted the language regarding 'by means of fire or explosive.' " He stated it was his intent to raise the matter in a motion for dismissal or judgment of acquittal at the conclusion of the trial. Meisenheimer did not raise the issue at the conclusion of trial and did not file a motion to arrest judgment within 10 days of the verdict. He stated the reason he did not was "that if the case proceeded on the Complaint as it was without objection, which it did, that it would not have been appropriate, or not been successful to, essentially you would have waived that, waived that objection or motion." He testified he was unaware of the ruling in *State v. Hall* during that period of time; but, at the evidentiary hearing, Meisenheimer stated, even after reviewing *Hall*:

"I think that it would have been very difficult for a trial judge to grant a new trial when you have to stand there in front of that Judge saying I knew this was, you know, this was defective, I didn't raise it because it made no difference, and it did not prejudice my case in any way, but Kings X, I kept my mouth shut and now you got to give me a new trial. As I sit here today, I still have a hard time believing that that motion would have been granted. Now, appellate court may have said differently. Had the motion been granted, you go back to trial a second time, I don't believe that the result of that trial would have been any different the second time."

The district court determined that Ferguson's

"greatest challenge to her trial attorney's alleged ineptness as a reliable tactician was his failure to move for dismissal of the Information or to move for arrest of judgment after the jury's verdict because the Information omitted an essential element of the criminal offense of arson, to-wit: the words: 'knowingly, by means of fire or explosive . . . .' "

However, the district court found that even though the complaint of March 10, 1997, and the information omitted the words of the arson statute " 'knowingly, by means of fire or explosive,' " the affidavit filed with the complaint left "no doubt that the Sampler's

Restaurant was destroyed by fire, that it was arson, and that [Ferguson] was a prime suspect." In addition, the court observed that at the conclusion of the preliminary hearing, the judge entered findings related to "the felony of arson," and the jury was properly instructed on the elements of the crime of arson. The district court further observed that Meisenheimer "testified that the failure of the two instruments to include the full statutory language in no way impaired his ability to defend the case," and that he was " 'fully aware of what Ms. Ferguson was charged with. . . .' "

In short, the district court sharply disagreed with Focht's testimony opining that Meisenheimer's legal representation of Ferguson fell below the standards for effective assistance of counsel in failing to adequately explore the financial condition of Sampler's, failing to adequately investigate the origin of the fire, and failing to move for arrest of judgment. Analogizing Focht's testimony to that of a Monday-morning quarterback, the district court determined that Meisenheimer "performed effectively" as Ferguson's attorney and that his performance met the standards set forth in the *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), *Chamberlain v. State,* 236 Kan. 650, 694 P.2d 468 (1985), and *Graham v. State,* 263 Kan. 742, 952 P.2d 1266 (1998), decisions. The district court found that Ferguson was not prejudiced by Meisenheimer's performance and that the outcome of the trial had not been affected by that performance. The court further wrote:

"Additionally, this Court states that even if an oral or written motion to dismiss or arrest judgment had been timely made or filed, it would have been overruled. Movant received a fair trial, she received the effective assistance of counsel, she was fully aware of the charges against her and was able to provide a defense, could not plead the conviction in any subsequent prosecution, or that the information violated her rights."

Ferguson immediately appealed the adverse judgment. The Court of Appeals panel found that trial counsel's nonstrategic failure to file a motion for arrest of judgment under a facially defective complaint constituted ineffective assistance of counsel. 31 Kan. App. 2d 102, Syl. ¶ 2. The panel concluded that, had Ferguson's

trial counsel timely filed the motion, it would have been reviewed under pre-*Hall* standards, resulting in the trial court granting a new trial. 31 Kan. App. 2d at 106. Finding that Ferguson had satisfied both the performance and prejudice prongs of the test for ineffective assistance of counsel, the Court of Appeals reversed the decision and remanded the case to the district court. 31 Kan. App. 2d at 107.

The State petitioned this court for review of the Court of Appeals' opinion, claiming that the Court of Appeals' decision sets a dangerous precedent and allows Ferguson to effectively circumvent the merits of the decision filed on direct appeal. Ferguson cross-petitioned for review of the district court's decision that she received effective assistance of counsel despite trial counsel's failure to further investigate the restaurant's financial condition or to "properly" investigate the fire; due to its finding of ineffective assistance of counsel, the Court of Appeals did not reach Ferguson's allegations. This court granted review of both petitions pursuant to K.S.A. 60-1507(d).

### 1. *Failure of Counsel to File Motion for Arrest of Judgment.*

The State contends on review that the Court of Appeals' decision of January 17, 2003, is erroneous for several reasons. First, it asserts that the decision "essentially gutted" *State v. Hall* and sets a dangerous precedent in that any trial counsel who fails to file a motion to vacate is automatically deemed ineffective counsel for Sixth Amendment purposes. According to the State, Ferguson's collateral attack claiming ineffective assistance of counsel is an effort to circumvent the Court of Appeals' holding in her original appeal.

In this case, Ferguson filed a motion pursuant to K.S.A. 60-1507. That statute states, in pertinent part:

"(a) *Motion attacking sentence.* A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or the constitution or laws of the state of Kansas, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may at any time move the court which imposed the sentence to vacate, set aside or correct the sentence.

"(b) *Hearing and judgment.* Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the county attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. The court may entertain and determine such motion without requiring the production of the prisoner at the hearing. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence said prisoner or grant a new trial or correct the sentence as may appear appropriate."

Ferguson claims she was deprived of her right to effective assistance of counsel at trial as guaranteed by the United States and Kansas Constitutions. The touchstone case discussing the right to effective assistance of counsel is *Strickland v. Washington,* 466 U.S. 668.

"Thus, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled. [Citations omitted.]" 466 U.S. at 685.

This court has stated:

"The Sixth Amendment right to counsel is the right to the effective assistance of counsel. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *State v. Rice,* 261 Kan. 567, 568, Syl. ¶ 12, 932 P.2d 981 (1997).

The proper standard of appellate review for claims of ineffective assistance of counsel by a convicted defendant is well recognized:

"Once a proper determination of the issue of claimed ineffective assistance of counsel has been made by the trial court, the scope of review by the appellate court is to review de novo the trial court's analysis of the performance and prejudice components, which are mixed questions of law and fact." *Rice,* 261 Kan. at 568, Syl. ¶ 16.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires that the defendant show, first, that coun-

sel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.

"(a) The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the effectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

"(b) With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Chamberlain*, 236 Kan. 650, Syl. ¶ 3.

In its decision concerning Ferguson's collateral attack, the Court of Appeals panel wrote:

"Ferguson first contends she was denied effective assistance of counsel because Meisenheimer did not file a timely motion to dismiss under K.S.A. 22-3208(3) or postconviction motion to arrest judgment under K.S.A. 22-3502. Ferguson argues that Meisenheimer did not 'advance some grand defense strategy' for not filing either motion, that he admitted at trial that he thought he waived the objection after the verdict, and that his deficient performance prejudiced her rights.

"The complaint in this case was defective. The State does not argue otherwise. . . . The complaint failed to allege Ferguson's acts were done 'knowingly' and 'by means of fire or explosive,' which are elements of arson in K.S.A. 21-3718. The Kansas Supreme Court has repeatedly emphasized that the State cannot merely refer to a statute to state the requisite elements of a crime. [Citation omitted.] We are bound by those decisions. Here the complaint clearly failed to state all the elements of the crime of arson.

. . . .

"If counsel had timely filed a motion to arrest judgment and the motion was granted, the State would have been able to file a new complaint that sufficiently stated the arson charge and then retry Ferguson. [Citations omitted.]

"A troubling aspect of this case is that allowing Ferguson to invoke review under the stringent pre-*Hall* standards by claiming ineffective assistance of counsel undermines the Supreme Court's apparent aim in *Hall* to reduce the number of jurisdictional challenges of this kind raised for the first time on appeal. By allowing

a defendant to assert an ineffective assistance of counsel claim and reevaluate the case under the pre-*Hall* standards, much of the *Hall* process would be rendered meaningless.

. . . .

"In a 60-1507 ineffective assistance of counsel context, the *Hall* process breaks down. Ferguson either did or did not receive a fair trial, using the common sense approach of *Hall*, whether or not an arrest of judgment motion was filed. It is difficult to see why there should be a different posttrial procedure depending on the filing of the motion. However, it appears that *Hall* requires precisely that analysis. On the other hand, it is obvious that in almost every conceivable situation, a competent defense counsel should know when a complaint is facially defective and that such a conviction can be set aside and a new trial obtained by the filing of a motion to arrest judgment.

"It was, therefore, obviously below standard for defense counsel to fail to notice an obvious defect and take the necessary steps to obtain a new trial for the defendant." 31 Kan. App. 2d at 104-07.

Ferguson acknowledges that the Court of Appeals' decision allowing a defendant to obtain a reevaluation of a defective information under pre-*Hall* standards by asserting an ineffective assistance of counsel claim renders much of the *Hall* process meaningless. Ferguson claims that the answer to the problem is to hold that trial counsel's failure to move to arrest judgment when an information is defective is *not* automatically ineffective assistance of counsel. Ferguson urges this court to hold that there is no ineffective assistance of counsel in those situations where the defendant's attorney deliberately chooses not to file a motion to arrest judgment for some tactical reason, but not where defense counsel fails to file a motion as a result of incompetence. Ferguson asserts that this would bar criminal defendants from employing a strategy of delay to gain a tactical advantage, while affording the truly aggrieved defendant the constitutional protection of the right to assistance of counsel under K.S.A. 60-1507.

The Court of Appeals apparently considered whether to impose a limitation on ineffective assistance of counsel claims where defense counsel deliberately chooses not to file a motion to arrest judgment for some strategic reason, but rejected that option, stating:

"All that would be left to apply *Hall* to would be the conceptually difficult instance where counsel knew of the jurisdictional problem but deliberately did

not file a motion to arrest judgment for some tactical reason. It is difficult to see what valid reason there might be to do that." 31 Kan. App. 2d at 107.

Ferguson's brief outlines several situations in which defense strategy might dictate not filing a motion to arrest judgment, such as where a defendant wishes to avoid other threatened federal or state prosecutions, wishes to avoid retrial on undecided charges, or wishes to avoid trial on more serious charges. According to Ferguson, adopting this interpretation would effectuate the true goal of *Hall*, which is to encourage defense attorneys to challenge a defective information in the district court, not to wait to raise the issue until the direct appeal.

The State contends that the Court of Appeals' decision "essentially gutted" *Hall*, and sets a dangerous precedent in that any trial counsel who fails to file a motion to vacate is automatically deemed ineffective counsel for Sixth Amendment purposes. We must consider whether under this factual set of circumstances, a 60-1507 motion collaterally attacking the sentence on the basis of ineffective assistance of counsel provides a defendant with a procedural vehicle for circumventing a holding on direct appeal that defendant suffered no prejudice as a result of errors in the charging documents.

In *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), the defendant alleged various claims of error in his direct appeal. In one claim, the defendant challenged the legality of one of his convictions because the complaint failed to allege the intent to permanently deprive the owner of possession, an essential element of theft. After finding that the information omitted an essential element of the crime, the *Hall* court found it to be "jurisdictionally and fatally defective" and reversed the defendant's conviction for that offense. 246 Kan. at 747. Defendant also contended on direct appeal that he had been deprived of effective assistance of counsel based on his attorney's alleged failure to present evidence at trial making his testimony more plausible. The *Hall* court declined to review the issue of effective assistance of counsel, stating that such an issue would not be considered for the first time on appeal.

Noting that the defendant raised the issue of a defective information for the first time on appeal, the *Hall* court expressed its

concern with the "number of appeals in Kansas in which the allegation of a defect in the information is raised for the first time on appeal." 246 Kan. at 753. The court set forth a detailed analysis of the constitutional safeguards incorporated into Kansas statutory and case law and crafted a new rule of law concerning assertions of charging document defects raised for the first time on appeal. The *Hall* court stated:

"The Bill of Rights in the Kansas Constitution requires that the accused be allowed to demand the nature and cause of the accusation. Kan. Const. Bill of Rights, § 10. . . . The § 10 language is similar to the language of the Sixth Amendment to the United States Constitution, which extends to an accused the right 'to be informed of the nature and cause of the accusation.' [Citation omitted.]

"The constitutional protections referred to are implemented by the requirements of K.S.A. 22-3201. The complaint, information, or indictment shall be a plain and concise written statement of the essential facts constituting the crime charged and, when drawn in the language of the statute, shall be deemed sufficient. . . . We agree with the statement in 1 Wright, Federal Practice and Procedure: Crim.2d § 125 at 365, to the effect that the fundamental purpose of the pleading is to inform the defendant of the charge so that the defendant may prepare a defense. The test for sufficiency ought to be whether it is fair to require the defendant to defend on the basis of the charge as stated in the particular indictment or information. The stated requirement that every ingredient or essential element of the offense should be alleged must be read in the light of the fairness test just mentioned. The information is sufficient, even if an essential averment is faulty in form, if by a fair construction it may be found within the text. All parts of the pleading must be looked to in determining its sufficiency. [Citation omitted.]

"Common sense will be a better guide than arbitrary and artificial rules. The sufficiency of an information should be determined on the basis of practical rather than technical considerations when addressed for the first time on appeal. [Citations omitted.]

. . . .

"K.S.A. 22-3502, Arrest of judgment, patterned after Fed. R. Crim. Proc. 34, was incorporated into the 1970 criminal code revision. . . .

" 'The court on motion of a defendant shall arrest judgment if the complaint, information or indictment *does not charge a crime or if the court was without jurisdiction of the crime charged.* The motion for arrest of judgment shall be made within 10 days after the verdict or finding of guilty . . . .' (Emphasis added.) K.S.A. 22-3502.

. . . .

"Subject matter jurisdiction lies in the district court and follows the defendant through the process of the issuing of the complaint, arrest pursuant to a warrant, initial appearance, the setting or denial of bond at the bond hearing, and the preliminary hearing, arraignment, and trial.

"We have focused in Hall's case upon the claim of a defective information raised for the first time on appeal. An information is defined in K.S.A. 1989 Supp. 22-2202(12) as 'a verified written statement . . . presented to a court, which charges the commission of a crime.' (A 'complaint' is a written statement under oath of the essential facts constituting a crime. K.S.A. 1989 Supp. 22-2202[8]. An 'indictment' is a written statement, presented by a grand jury to a court, which charges the commission of a crime. K.S.A. 1989 Supp. 22-2202[11]).

"Our past reasoning has dictated the reversal we have applied to Count II, the theft of the cattle, in the instant case. The word 'permanently' was omitted from the information. There was no incorporation by reference from Count III where 'permanently' was alleged with reference to the theft of the truck and trailer that hauled the Count II cattle.

"We note: (1) the jury was instructed properly as to all of the elements of theft in Counts II and III; (2) the information in Counts II and III cited the theft statute (K.S.A. 21-3701, listing a class E felony); (3) no bill of particulars was requested by Hall (K.S.A. 22-3201[5]); (4) no motion for arrest of judgment was filed (K.S.A. 22-3502); (5) Hall was represented by experienced retained counsel; and (6) no argument has been advanced by Hall that the omission of 'permanently' in Count II of the information prejudiced him in any way or in any way interfered with the preparation of his defense. We have reversed Count II based upon precedent.

"*We now depart from that precedent. We depart from what we believe to have been a mistaken judicial blending of the concepts of 'jurisdiction.'*

"K.S.A. 22-3201 requires the information to be 'a plain and concise written statement of the essential facts constituting the crime charged . . . .' We have then consistently held that if an element of the crime is omitted a jurisdictional defect is present which may be raised for the first time on appeal. [Citations omitted.]

"We have also held that, pursuant to K.S.A. 22-3201(4), the trial court may permit an information to be amended at any time before verdict if no new crime is charged and if substantial rights of the defendant are not prejudiced. *State v. Rasch*, 243 Kan. 495, 758 P.2d 214 (1988). . . . We held that when a motion to amend is made during trial, with defendant and counsel present, absent any showing of prejudice to the defendant, the amendment is effective immediately. The court's action is not invalidated because a written journal entry is not filed until after the trial has been completed. We extended the rationale of *Nunn* in *State v. Switzer*, 244 Kan. 449, 769 P.2d 645 (1989), to permit an oral amendment of the information during trial to be validated by a nunc pro tunc amendment to the journal entry ordered by this court in our opinion.

"The cases that we have considered under K.S.A. 22-3201(5), in amending an information, have not presented insoluble jurisdictional problems. *Jurisdiction does not descend on the proceedings at the moment the amendment is granted* or, as in *Switzer*, months or years later when the nunc pro tunc order is signed by the trial court after a ruling on appeal.

. . . .

"We are applying a 'common-sense' interpretation of informations when faced in the future with the issue of jurisdiction or failure to charge a crime as a result of a claimed defective information raised for the first time on appeal. We will review the information as a whole and interpret it to include facts which are necessarily implied. A tardy 'first time on appeal' challenge to the information will be faced with a liberal construction in favor of validity. [Citations omitted.]

"A motion for arrest of judgment is the proper procedure for a defendant who wishes to challenge the sufficiency of the information after trial because of either a claim that it did not charge a crime or that the court was without jurisdiction of the crime charged. When such a motion is timely field, the trial court, in reviewing the motion, shall test its merit by utilizing the rationale of our pre-*Hall* cases." (Emphasis added.) 246 Kan. at 753-64.

The *Hall* court then announced the now well-recognized test to be applied to all prospective cases raising the issue of an information defect for the first time on appeal. The primary effect of the post-*Hall* liberal interpretation rule was to impose a procedural rule to prevent automatic reversal of convictions on appeal on due process grounds where defense counsel failed to challenge the sufficiency of a defective information at the district court level. The court's rationale for crafting the new rule in *Hall* appears to be to set up a mechanism whereby convicted defendants were encouraged to bring claims of defects in charging documents to the attention of the trial court and to discourage such claims from being subject to review for the first time on appeal.

Logically, allowing Ferguson to profit from the application of the pre-*Hall* standard on collateral attack would undermine the rationale behind the rule and would instead discourage defendants from bringing timely claims of informational defects to the attention of the trial court, and result in numerous ineffective assistance of counsel claims subject to review for the first time on collateral attack. This result could not have been anticipated by the *Hall* court.

Here, Ferguson contends that Meisenheimer's failure to move for dismissal of the information or to arrest judgment on the ground that the information did not charge a crime was outside the range of professionally competent assistance of counsel in violation of the laws and Constitutions of the United States and Kansas.

On review, this court must consider the trial court's analysis of whether counsel's performance was deficient and whether the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. The district court concentrated on the potential prejudicial effect of trial counsel's deficient performance, if any, on the outcome of the trial. In the collateral attack, however, Ferguson focuses on the prejudicial effect of trial counsel's failure to move to arrest judgment on the outcome of proceedings after the trial.

Even if this court accepts the Court of Appeals' determination that Meisenheimer's inaction satisfies the deficient performance prong of the *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), test as correct, it must satisfactorily address the perplexing question of prejudice presented here. In the original appeal of Ferguson's conviction, the Court of Appeals determined that Ferguson suffered no prejudice at trial as a result of the defective information. Adopting the Court of Appeals' approach that applied the pre-*Hall* test in this situation results in a second review of the merits of whether a defendant was prejudiced as a result of a defective information. Arguably, the issue of whether she suffered prejudice as a result of the defects in the information was determined in the original appeal, and Ferguson should be precluded from claiming prejudice again on collateral attack in the guise of ineffective assistance of counsel.

In the case of *Roach v. State,* 27 Kan. App. 2d 561, 7 P.3d 319 (2000), the Court of Appeals considered a petitioner's 60-1507 claim that his conviction should be reversed 20 years after he pled guilty to amended charges because the complaint failed to allege essential elements of the crime and, thus, was jurisdictionally defective. Judge Lewis, authoring the decision for the Court of Appeals, wrote:

"In this case, petitioner basically argues that the complaints filed against him did not charge a crime and that the court had no jurisdiction to convict him. We conclude, after our review of the record, that petitioner's argument is without merit.

. . . .

"Petitioner argues that since his conviction was final before *Hall* was decided, the 'pre-*Hall*' rule should apply in his case. . . .

"We conclude the pre-*Hall* cases are no longer the law of this state and that in the case of a collateral attack such as the one in question, the liberal common-sense rule enunciated in *Hall* will apply. In *Hall*, the Supreme Court dealt with a direct appeal in which a jurisdictional issue based on the language of the complaint was being raised for the first time on *direct appeal*. In this case, we deal with a 20-year-old collateral attack on the defendant's convictions that has never been raised before. The spirit and purpose of *Hall* requires that we apply its common-sense rule to the facts presently before this court.

"The real issue in this case is whether the information filed against petitioner was sufficient to charge him with the crimes and establish jurisdiction of a court to try him and convict him of those crimes. The Supreme Court has clearly defined what a complaint must allege in order to charge a crime in *State v. Rasch*, 243 Kan. 495, 758 P.2d 214 (1988), and *State v. Micheaux*, 242 Kan. 192, 747 P.2d 784 (1987). Both of these decisions were relied on by the Supreme Court in arriving at its decision in *Hall*.

. . . .

"As we understand the Supreme Court's decision, where a defendant is adequately apprised of the offense charged and the offense is a crime under the laws of the state, a defect in the complaint does not deprive the trial court of jurisdiction over that crime." 27 Kan. App. 2d at 565-67.

The core of the *Roach* opinion is the conclusion that the pre-*Hall* analysis does not apply in collateral attack cases challenging jurisdiction based on defects in the charging documents, so long as a defendant was adequately apprised of the offense charged and that offense is a crime under the laws of Kansas. Instead, on collateral attack, the liberal common-sense rule of *Hall* will apply.

The liberal common-sense rule enunciated in *Hall* should extend not only to challenges to the sufficiency of the charging document, but also will apply for purposes of analyzing the prejudicial effect of trial counsel's failure to file a motion to vacate in a collateral attack based on ineffective assistance of counsel. This necessitates overruling *Hall* in part. The *Hall* opinion states:

"A motion for arrest of judgment is the proper procedure for a defendant who wishes to challenge the sufficiency of the information after trial because of either a claim that it did not charge a crime or that the court was without jurisdiction of the crime charged. When such a motion is timely filed, the trial court in reviewing the motion, shall test its merit by utilizing the rationale of our pre-*Hall* cases." 246 Kan. at 764.

The pre-*Hall* standard will no longer apply in the case of a collateral attack such as we see in this case; instead, the liberal common-sense rule enunciated in *Hall* will apply.

We reverse the Court of Appeals' decision and affirm the trial court.

### 2. *Counsel's Failure to Investigate the Restaurant's Financial Status*

In addition to her ineffective assistance of counsel claims, Ferguson challenges the district court's decision concerning her claim that trial counsel's failure to further investigate the restaurant's financial condition and failure to present expert accounting testimony deprived her of effective assistance of counsel. Due to its finding of ineffective assistance of counsel based on failure to file a motion to arrest judgment on the grounds the information was defective, the Court of Appeals did not review this claim.

The performance and prejudice prongs of the ineffective assistance of counsel inquiry are mixed questions of law and fact on appeal requiring de novo review. *State v. Sperry*, 267 Kan. 287, 297, 978 P.2d 933 (1999). Once a district court has entered findings of fact and conclusions of law on an ineffective assistance of counsel claim, an appellate court determines "whether the decision reached by the trial court follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have substantial support in the evidence." *State v. Orr*, 262 Kan. 312, 322, 940 P.2d 42 (1997).

"Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circum-

stances, the challenged action 'might be considered sound trial strategy.' [Citation omitted.]" *Strickland*, 466 U.S. at 689.

In general, the defendant bears the burden of demonstrating that trial counsel's alleged deficiencies were not the result of strategy. *Rice*, 261 Kan. 567; *State v. Goswisk*, 142 Ariz. 582, 586, 691 P.2d 673 (1984) (burden rests with the defendant to "show that counsel's decision was not a tactical one but, rather, revealed ineptitude, inexperience, or lack of preparation"); LaFave, 3 Criminal Procedure § 11.10(c) (2d ed. 1999) ("Since *Strickland* starts with an assumption of competency, it places upon the defendant the burden of showing that counsel's action or inaction was not based on a valid strategic choice.").

"[T]he trial court, which observed counsel's performance and was aware of the trial strategy involved, is in a much better position to consider counsel's competence than an appellate court . . . and should be the first to make a determination of such an issue." *State v. Van Cleave*, 239 Kan. 117, 119, 716 P.2d 580 (1986).

Summarizing its decision denying Ferguson's motion to vacate, the district court wrote:

"The testimony of David Mitchell and John Evans, in their respective entirety, goes to the claim that Mr. Meisenheimer failed to satisfactorily probe the financial condition of [Ferguson's] business just before the fire, during defense at trial. Likewise, [Ferguson] presented the testimony of a renowned expert in arson investigation, Dr. John De Haan, to show that Mr. Meisenheimer's failure to call an expert witness on the issue of arson investigation fell below the range of effective assistance of counsel. These omissions, if indeed they are omissions, on the part of Mr. Meisenheimer are, in this Court's opinion, just the type of action that the Kansas Supreme Court said 'might be considered sound trial strategy . . . .' *State v. Rice*, 261 Kan. 567."

Ferguson complains that Meisenheimer did not review John Evans' accounting records pertaining to Sampler's restaurant prior to trial despite the fact that the State's theory was that her motive for burning the restaurant was the poor financial condition of the restaurant. Ferguson contends on appeal that, had Meisenheimer looked at the records with Evans, Evans would not have testified that the restaurant was losing money.

Evans testified at the evidentiary hearing that his statement at trial that this was not a situation in which a profit was being made was incorrect. He stated that, after reviewing the accounting records, the business was making a small or "slight" profit. However, Evans admitted on cross-examination that if the $7,000 loan were subtracted, there would be a negative balance.

At the evidentiary hearing, Ferguson presented the testimony of David Mitchell, a certified public accountant. Mitchell testified that after reviewing the accounting records of Evans, he concluded that the total net income available to the owner for the period of time from September 1995 to September 1996 was $23,220.28. On cross-examination, however, Mitchell admitted he did not know how much money was in the checking account of Sampler's Restaurant, whether the company was "profitable," or what the assets of the company were versus the liability on the day of the fire. Mitchell was not aware employee paychecks had bounced or that the electricity had been turned off for nonpayment during the preceding year. He was unaware of pending expenses for necessary improvements on the property and admitted he had no way of knowing the condition of the business on the day of the fire as he was only provided with information through September 1996.

In regard to reasons for failing to further investigate the financial condition of Ferguson's businesses and for not presenting expert testimony from an accountant at trial, Meisenheimer testified:

"[I]t was my view that the State was trying to show a motive that partially existed but wasn't as strong as the State wanted to make it out to be and I, the questions that [the prosecutor] asked were ineffective. I felt like they, they were not serving the purpose. In fact, they were having a negative effect based upon the fact he says you, it's not profitable, and the balance sheet shows right there in black and white there's a small profit, and I didn't think that was making an impression on the jury."

Meisenheimer stated he did not consult with a certified public accountant or other accounting expert in the preparation of the defense because:

"[I]t was my assessment that there were, it was not good trial strategy to, to act as if there were no financial problems because it appeared to me based on the evidence that there were. On the other hand, I believed that, that those financial

problems were being overplayed by the State, and I thought that a jury would see they were being over-played by the State, and so that seemed to me to be an appropriate way to handle that matter."

Competent evidence supports the district court's legal conclusion that trial counsel's decisions about presenting evidence regarding the financial status of the restaurant were based on legitimate trial strategy. Ferguson's contention that the district court erred in concluding that trial counsel did not render constitutionally deficient assistance of counsel due to his decision not to further investigate the restaurant's financial condition or present expert accounting testimony fails.

3. *Counsel's Failure to Further Investigate Cause of Fire and Present Expert Arson Investigator.*

Finally, Ferguson contends she was deprived of her constitutional right to effective assistance of counsel because her trial lawyer failed to properly investigate the cause of the fire and failed to present expert testimony from an arson investigator at trial.

In its memorandum decision, the district court classified Meisenheimer's actions in regard to investigating the fire and obtaining the use of an arson investigator as "just the type of action that the Kansas Supreme Court said 'might be considered sound trial strategy.' "

In response to questions concerning his reasons for not obtaining an expert fire investigator to present testimony at trial, Meisenheimer indicated he had sent the reports of the State's experts and other relevant documents to Don Emerson for review. Meisenheimer stated that the information that Emerson provided "was not particularly helpful to me, or in my view, particularly helpful to the defense . . . ." He testified that he felt "the differences between the investigators of the insurance company and the . . . State of Kansas provided as good [of a] contradiction to each other as we were, or better contradiction to each other than we were going to get from Mr. Emerson." Meisenheimer characterized his thoughts about the value of retaining Emerson as "marginal or nominal." He stated that the theory of defense he intended

to present at trial was, "we don't know what happened, but whatever happened, Miss Ferguson did not set fire to the restaurant."

The district court found that at trial, Meisenheimer "relied upon his twenty years of experience as an attorney and represented his client with her best interests in mind," and stated that it was "of the opinion that Francis Meisenheimer is an extraordinarily well-qualified attorney, with great expertise in criminal cases and jury trials." The district court concluded that Meisenheimer's performance "did not fall below the standards required by *Strickland*, *Chamberlain*, and *Graham*, . . . that [Ferguson] was not prejudiced, and that the outcome of her trial was not affected by that performance."

Again we find competent evidence supporting the district court's conclusion that trial counsel employed legitimate trial strategy in regard to investigating the fire and obtaining the use of an arson investigator. Ferguson's contention in this regard fails.

At oral argument before this court, Ferguson's counsel entered an appearance but appellate counsel for the State did not. At oral argument, appellate counsel for Ferguson stated that Ferguson's trial counsel, Meisenheimer, was ineffective because he had no idea how to defend an arson case. In support of that contention, appellant's counsel made assertions about Meisenheimer that were not argued below and did not appear in the appellant's briefs as required by appellate practice Rule 6.02 (2002 Kan. Ct. R. Annot. 34). Appellant's counsel alleged that when Meisenheimer appeared before the district court for the 60-1507 hearing, he lied to the court in order to justify his failure to procure an arson expert for the defense.

Because appellant's counsel appeared unopposed without making these assertions in the briefs or below before the district court, the State had no opportunity to counter or comment, resulting in prejudice. The ethics of making such a grave accusation while allowing opposing counsel no opportunity to respond are questionable, at best. In our opinion, employing a strategy of situational advantage and surprise tactics exceeds the acceptable bounds of zealous advocacy.

A review of the record on appeal fails to convince this court that Meisenheimer deliberately misled the district court at the 60-1507 hearing. In the future, appellate counsel are reminded to set forth all arguments within the briefs, citing the record for support in compliance with Rule 6.02 (2002 Kan. Ct. R. Annot. 34) and Rule 6.03 (2002 Kan. Ct. R. Annot. 36). The Preface to the Kansas Rules on attorney conduct states that attorneys should strive to "demonstrate respect for the legal system and those who serve it." 2002 Kan. Ct. R. Annot. 310.

The decision of the Court of Appeals is reversed, and the district court is affirmed.

ABBOTT, J., not participating.