NOT DESIGNATED FOR PUBLICATION

No. 118,947

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CLINT LEE MCKINNEY,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed December 21, 2018. Affirmed.

*John R. Kurth*, of Kurth Law Office Incorporated, P.A., of Atchison, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM:  Clint Lee McKinney appeals from the district court's denial of his K.S.A. 60-1507 motion after holding an evidentiary hearing. McKinney claims that his trial counsel was ineffective for failing to fully investigate his case and by failing to call the victim's aunt as a witness at trial. McKinney also claims that his appellate counsel was ineffective for failing to raise an issue regarding the amendment of the criminal complaint. Finding no errors requiring reversal, we affirm.

FACTS

During the summer of 2012, A.J.L. was staying with her parents, siblings, and her aunt, Carmen Levier, in Levier's house. McKinney was also staying at Levier's house at that time.

On August 26, 2012, A.J.L., her parents, Levier, McKinney, and McKinney's girlfriend, Adriana Wahwasuck, were drinking and socializing at Levier's house. A.J.L., who was 16 years old at the time, admitted that she was drinking that night. Usually A.J.L. would sleep in a bedroom while McKinney slept on a couch. That night, however, A.J.L. drank too much alcohol, and she fell asleep sitting up in the back seat of a vehicle parked outside.

A.J.L. awoke to find McKinney grabbing her leg and pulling her towards him. McKinney tried to pull A.J.L.'s shorts down, but she kicked him and told him to stop. McKinney was able to get her shorts and underwear off. He told A.J.L. to calm down, and he licked her vagina.

Wahwasuck came outside to look for McKinney and found him in the backseat of the vehicle with A.J.L. Wahwasuck yelled at them and began hitting McKinney. A.J.L. tried to tell Wahwasuck what happened, but she would not listen. A.J.L. was able to get out of the vehicle and ran into the woods. McKinney then pushed Wahwasuck into the vehicle, drove her down a dirt road, and threw her out of the vehicle. Wahwasuck ran to a nearby house where a couple came to her aid and contacted law enforcement.

Officer Matthew Simpson found A.J.L. in the woods and took her to the law enforcement center. AJ.L. told Simpson about the incident in the vehicle with McKinney, stating that McKinney penetrated "her vaginal area with his hands and fingers and attempted to kiss her."

A.J.L. also told Officer Simpson that on July 28, 2012, two days before her 16th birthday, McKinney came into her bedroom and raped her by having sexual intercourse with her. A.J.L. told McKinney to get out of her bedroom, but he would not listen. A.J.L. was scared and did not know how to tell anyone about the rape. A.J.L. was worried that no one would believe that McKinney raped her.

Rebekah Jones, program planner for the Prairie Band Potawatomi Tribal Victim Services Program, also spoke to A.J.L. at the law enforcement center on August 26, 2012. A.J.L. told Jones that McKinney put his mouth "on her private parts."

A.J.L. was taken to the hospital to have a sexual assault examination. A.J.L. told sexual assault nurse Joy Thomas that after she fell asleep in the back seat of a vehicle, she woke up with McKinney grabbing her legs and taking her clothes off. A.J.L. told Thomas that McKinney licked her vagina. A.J.L. also told Thomas that on July 28, 2012, McKinney came into her bedroom and raped her. Saliva was detected in A.J.L.'s vaginal swabs and in her underwear. McKinney's DNA was consistent with the DNA found in A.J.L.'s rape kit.

On August 30, 2012, Officer Simpson interviewed McKinney. McKinney told Simpson that he saw A.J.L. lying down in the backseat of his vehicle on the morning of August 26, 2012. McKinney admitted to Simpson that he had licked A.J.L.'s vagina. McKinney also admitted that on the earlier occasion, July 28, 2012, he was "pretty plastered" and "he could tell that something had happened" with A.J.L. McKinney said he "really couldn't recall the details."

On August 27, 2012, McKinney was originally charged with two counts of rape, one count of kidnapping, one count of aggravated sexual battery, one count of domestic battery, and one count of minor in possession/consumption of alcohol. The State amended the charges against McKinney five separate times before the first jury trial was

3

held in the case. In May 2013, McKinney's first trial was held. The jury found McKinney not guilty of criminal restraint and battery but was unable to reach a unanimous verdict for the remaining charges.

On June 14, 2013, a sixth amended complaint was filed. Both before and during the second trial several additional amendments and dismissals of the charges were made. Ultimately, the second jury convicted McKinney of rape, aggravated criminal sodomy, and furnishing alcohol to a minor. The district court sentenced McKinney to a controlling terms of 300 months' imprisonment.

McKinney filed a direct appeal, claiming: (1) the prosecutor committed error during closing argument, (2) the district court erred in giving an unrequested instruction regarding McKinney's failure to testify, and (3) a sentencing violation. *State v. McKinney*, No. 111,254, 2015 WL 3555354, at *1 (Kan. App. 2015) (unpublished opinion). A panel of this court affirmed McKinney's convictions and sentence. 2015 WL 3555354, at *7.

On January 23, 2017, McKinney moved for relief under K.S.A. 60-1507 based primarily on his claim that he received ineffective assistance of counsel. The district court appointed counsel to represent McKinney, and counsel filed "Plaintiff's Issues Based Upon Petition for Habeas Corpus." Among the 10 issues asserted, McKinney contended: (1) appellate counsel failed "to raise the issue of the additional crime charged in the 6th Amended Complaint," (2) trial counsel failed "to investigate, meet with and call witnesses at the trial," and (3) trial counsel failed to meet with McKinney and discuss trial strategy.

An evidentiary hearing was held on December 27, 2017. At that hearing, the State informed the district court that it had issued subpoenas for both trial and appellate counsel but they were not present at the hearing.

4

McKinney was the only witness who testified at the evidentiary hearing. As to trial preparation, McKinney testified that trial counsel met with him "ten minutes on a Friday before trial on Monday," dropped off some discovery at the jail, asked McKinney what his defense was, and wanted McKinney to accept a plea agreement.

McKinney also noted his concerns that Levier was called as a defense witness in the first trial, but she was not called as a witness in the second trial. McKinney testified that he believed Levier's testimony would have been valuable as to the issue of who provided the alcohol to A.J.L. McKinney also noted that Levier testified about sleeping arrangements in the first trial. But when McKinney was asked how Levier's testimony was necessary to his defense, he went back to the issue of who furnished A.J.L. with alcohol.

McKinney also claimed that trial counsel should have hired a private investigator because

> "there was a claim that somebody got dropped off at an abandoned house, but from where [Levier] lived to the neighbor's house . . . there is no abandoned house.
>
>     . . . .
>
>     "There is no abandoned home from her house to the Booth residence, and there was a claim that somebody had to have been dropped off, so I don't know where this abandoned house is that they're talking about on that road. If somebody would have drove there and seen that—[.]"

McKinney also argued that there should have been a unanimity instruction given because he was confused as to whether he was defending an act that was alleged to have occurred in a red Jeep or a white Subaru. McKinney believed the jury should have been given an instruction to say specifically what act occurred and where it occurred. McKinney claimed this could have happened if trial counsel had more meetings and discussions with him in preparation for trial. McKinney admitted that trial counsel

5

brought up the discrepancy about whether the act occurred in a truck or a car during closing arguments.

McKinney also criticized appellate counsel for failing to raise an issue regarding the sixth amended complaint in his direct appeal. McKinney claims he was confused regarding the charges brought against him.

At the close of the hearing, the district court took the matter under advisement to review the video-taped evidence. On January 16, 2018, the district court issued a detailed written opinion denying McKinney's K.S.A. 60-1507 motion. The district court found that McKinney had not been denied effective assistance of counsel. The court found that McKinney failed to show that he had been prejudiced by counsel's performance and noted that McKinney was "prejudiced primarily by his own statements which he has artfully avoided discussing in his 60-1507 case."

McKinney filed a timely appeal from the district court's decision.

ANALYSIS

On appeal, McKinney contends the district court erred when it denied him relief after an evidentiary hearing on his K.S.A. 60-1507 motion, claiming he was denied ineffective assistance of both trial and appellate counsel. McKinney focuses his argument on trial counsel's failure to call Levier as a defense witness, counsel's failure to communicate with him, and counsel's failure to adequately investigate. McKinney also criticizes appellate counsel's decision not to challenge the sixth amended complaint on appeal.

6

Any issues raised in the K.S.A. 60-1507 motion but not briefed on appeal are deemed waived and abandoned. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

McKinney's ineffective assistance of counsel claims present mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims and issues its findings, we review the underlying factual findings for support by substantial competent evidence and we determine whether those findings support the court's conclusions of law. We apply a de novo standard to the conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

*Ineffective assistance of trial counsel*

McKinney claims that trial counsel "failed to properly communicate with him, failed to interview, failed to investigate, and failed to call witnesses to the stand in his defense which would have changed the outcome of the trial."

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable

7

probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

In considering whether counsel's work was substandard, we must avoid hindsight bias and instead "eliminate the distorting effects of hindsight." *Moncla v. State*, 285 Kan. 826, 832, 176 P.3d 954 (2008). This deferential assessment is made in light of reasonable conduct under "prevailing professional norms" among counsel. *Strickland*, 466 U.S. at 688.

In general, the movant bears the burden of demonstrating that trial counsel's alleged deficiencies were not the result of strategy. *Ferguson v. State*, 276 Kan. 428, 446, 78 P.3d 40 (2003); LaFave, 3 Criminal Procedure § 11.10(c) (4th ed. 2018) ("Since *Strickland* starts with an assumption of competency, it places upon the defendant the burden of showing that counsel's action or inaction was not based on a valid strategic choice.").

First, McKinney points to the fact that trial counsel called Levier as a defense witness in his first trial—which resulted in a hung jury on three counts—but counsel failed to call her as a witness in his second trial. McKinney asserts that if trial counsel had called Levier to the stand in the second trial "a [different] outcome could have been produced." McKinney also makes several vague and conclusory remarks criticizing trial counsel's investigation and strategy, but he fails to articulate specifically how counsel's performance was deficient and how the outcome would have been different but for trial counsel's performance. For instance, McKinney makes a conclusory statement that "the investigation was less than reasonable and, therefore, so was the trial attorney's strategy." But McKinney does not explain his statement with examples as to what else should have been investigated or why the investigation fell short. Mere conclusory statements will not

support an ineffective assistance of counsel claim. *Holt v. State*, 290 Kan. 491, 496, 232 P.3d 848 (2010).

Trial counsel has the responsibility for making tactical and strategic decisions including the determination of which witnesses should testify. See *State v. Rivera*, 277 Kan. 109, 117, 83 P.3d 169 (2004). Even though experienced attorneys might disagree on the best tactics or strategy, deliberate decisions based on strategy may not establish ineffective assistance of counsel. *State v. Griffin*, 279 Kan. 634, 649, 112 P.3d 862 (2005). In evaluating whether counsel used reasonable trial strategy, courts are required to not only "'give [counsel] the benefit of the doubt' . . . but to affirmatively entertain the range of possible 'reasons [] counsel may have had for proceeding as they did.'" *Cullen v. Pinholster*, 563 U.S. 170, 196, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011).

Here, we are at a disadvantage in evaluating trial counsel's strategy because he did not testify at the hearing. The State advised the district court at the hearing that they had not seen the return on the subpoenas of either trial or appellate counsel and neither one was present for the hearing. (We note that the records of the Clerk of the District Court show that the subpoena for appellate counsel was returned two days after the hearing marked "no service," and there is no return whatsoever in the Clerk's records on the subpoena for trial counsel). In any event the State told the district court that it was "relatively comfortable" proceeding without the testimony of the two counsel and McKinney's counsel indicated they wanted the hearing to proceed without delay.

Based upon the lack of testimony from the two attorneys, McKinney now asserts that his own testimony from the hearing was "uncontradicted." Even though this is true, McKinney's testimony does not affirmatively establish that trial counsel's performance was ineffective. As noted above, it is McKinney's burden to show that trial counsel's performance was ineffective. McKinney fails to explain how trial counsel's failure to communicate and failure to investigate would have resulted in a different outcome.

9

The record shows that trial counsel's decision not to call Levier as a witness in the second trial may also have been based on sound trial strategy. At the first trial, Levier provided confusing testimony in regards to McKinney's and A.J.L.'s sleeping arrangements in her home. Levier testified that A.J.L.'s parents and their younger boy slept in one bedroom, she and A.J.L. slept in one bedroom, A.J.L.'s sisters slept in a third bedroom, and McKinney slept on the couch in the living room. Levier testified that on July 28, 2012, A.J.L.'s sisters began sleeping in the room with Levier, and McKinney started sleeping in the bedroom where the two girls used to sleep. On cross-examination, Levier testified that it was possible that it was actually after August 1, 2012, when McKinney started sleeping in a bedroom. Levier then indicated that on July 28, 2012, McKinney had his own room. And on redirect examination, Levier testified that after August 1, 2012, the sleeping arrangement had changed and McKinney was "back on the couch." On recross-examination, Levier testified that prior to August 1, 2012, McKinney slept on the couch. None of the testimony established that McKinney no longer had access to where A.J.L. was sleeping or was unable to enter the bedroom where she was sleeping on July 28, 2012. In addition, McKinney admitted to Officer Simpson that "he could tell that something had happened" with A.J.L., but he could not remember the details because of his excessive consumption of alcohol.

At the second trial, Levier was not called to testify. It is McKinney's burden to show that trial counsel's decision not to call Levier at the second trial was not sound trial strategy. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *Kelly*, 298 Kan. at 970. Because Levier's testimony regarding the sleeping arrangements was confusing and unclear, it is likely that trial counsel made a strategic decision not to call her to testify at the second trial. In the absence of evidence that trial counsel's decision not to call Levier to testify constituted deficient performance, we presume that trial counsel acted reasonably in making this strategic decision. And McKinney fails to show otherwise. Despite

McKinney's assertions to the contrary, we cannot presume that Levier's testimony is the reason that the first trial ended in a hung jury on three counts.

McKinney proffered that Levier's testimony would have helped his defense regarding the charge of furnishing alcohol to a minor. He claims Levier's testimony would have shown that A.J.L.'s parents gave her the alcohol and allowed her to drink. But at trial, A.J.L. admitted that her parents had provided alcohol to her that evening, so it is unclear how Levier's testimony would have further helped McKinney.

Given all of the testimony and evidence supporting the convictions, we are convinced that Levier's testimony would not have changed the outcome of the trial.

*Ineffective assistance of appellate counsel*

McKinney also claims that appellate counsel was deficient for failing to challenge the sixth amended complaint in his direct appeal.

In the appellate context, our Supreme Court has defined prejudice as reasonable probability that the movant would have won his or her appeal but for appellate court's deficient performance. *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014). Appellate counsel's failure to raise an issue on appeal is not per se ineffective assistance of counsel. *Laymon v. State*, 280 Kan. 430, Syl. ¶ 3, 122 P.3d 326 (2005).

At first glance, McKinney's argument regarding the multiple amendments to the complaint in this case warrants a second look. For various reasons, the State amended the complaint eight times. But as noted by the district court, there is little likelihood that if appellate counsel had raised this issue on appeal, the result of the appeal would have been different.

11

As trial began, the complaint stated that the three charged crimes occurred on August 26, 2012. However, it is presumed that the State intended to proceed with the three charges that remained after the result of the first trial. The first charge of rape had previously been charged as occurring on July 28, 2012, but on the sixth amended complaint, the charge was listed as occurring on August 26, 2012. As noted by the district court, "[m]ost observers would conclude that there was a typo in the use of the date."

Defense counsel raised the issue of the incorrect date at trial just prior to the examination of the first witness. The district court examined the prior complaints and noted that all of the prior complaints listed the rape charge as occurring on July 28, 2012. The court stated:

> "And the Sixth Amended Complaint I will admit seems to be that somebody in the State screwed up. However, as you've indicated, the State can amend it at the close of their evidence to reflect the correct date and I don't know that you can claim that to be uncharged conduct from the 28th of July when all the way through this thing that's been the evidence, and the State can amend as long as there's no surprise or prejudice to the defendant."

The district court allowed the amendment to the complaint, reasoning that the State was correcting the date rather than charging a new crime. Defense counsel again stated his objections at the close of evidence and prior to jury deliberations.

A complaint may be amended at any time before the verdict provided no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. K.S.A. 22-3201(e). Despite multiple amendments to the complaint, the record shows that McKinney knew what crimes he was charged with and was able to prepare his defense.

The district court examined the history of the charges and concluded:

12

"Here the final hand amended complaint charged the defendant with the same charges the first jury hung on. This was not an additional or different crime nor was there prejudice as these final charges mirrored the discovery record and the defendant's own statements to law enforcement. The State's opening statement in the second trial also addressed these same charges. . . . Certainly, if the jury was instructed on the 'sixth' amended complaint there would have been a problem, but that was corrected in a timely fashion.

"[McKinney's] concerns that [trial counsel] failed to object or preserve the 'sixth' amended complaint issue is not supported by the record. Just the opposite is true. [Trial counsel] was the person who identified the error and even though his efforts did not avail [McKinney] his performance can not be criticized on this point. Appellate counsel also did not fail [McKinney] on this issue. A hindsight review of the time line of this case and K.S.A. 22-3201(e) make clear that this issue was unlikely to survive the scrutiny of the appellate courts."

McKinney recognized that he has the burden to show that but for appellate counsel's alleged deficient conduct, there is a reasonable probability that the appeal would have been successful. However, McKinney's sole argument as to appellate counsel's conduct is based on mere speculation. He asserts: "Would raising this issue have made the appeal successful? To say yes would be a guess. To say no would be a guess. Regardless, it was error not to have raised the issue."

Absent of any suggestion of prejudice, McKinney's claim of ineffective assistance of appellate counsel must fail.

We find that substantial competent evidence supports the district court's finding that McKinney failed to show that trial counsel's and appellate counsel's representation was deficient. The record supports the district court's denial of McKinney's K.S.A. 60-1507 motion.

Affirmed.