No. 61,067

STATE OF KANSAS, *Appellee*, v. KENNETH RASCH, *Appellant*.

(758 P.2d 214)

Opinion filed July 8, 1988.

*Shannon Crane*, assistant appellate defender, argued the cause, and *Brad L. Keil*, assistant appellate defender, and *Benjamin C. Wood*, chief appellate defender, were on the brief for appellant.

*Ty Kaufman*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Kenneth Rasch appeals convictions of four counts of aggravated robbery, K.S.A. 21-3427, one count of attempted aggravated robbery, K.S.A. 21-3427 and K.S.A. 1987 Supp. 21-3301, and two counts of aggravated battery, K.S.A. 21-3414. Rasch contends (1) that his convictions for aggravated robbery should be reversed because the State did not amend the jurisdictionally defective complaint by interlineation or by filing an

amended complaint, and (2) that the trial court erred by admitting Rasch's incriminating statements.

On September 11, 1986, a man and woman, later identified as the defendant Kenneth Rasch and his companion Glenna Preston, entered the State Street Club in Lindsborg, Kansas. After having drinks, the couple left the club. Shortly thereafter, Rasch re-entered the club and ordered the bartender to give him the money from the cash drawer. When the bartender hesitated, Rasch held a loaded pistol to the bartender's neck. The bartender placed approximately $118.00 from the cash register on the bar.

When one of the six Bethany College students in the establishment approached the bar, the defendant pointed the gun at him and demanded and received the student's money. Rasch then struck one of the female students with the gun. When one of her male companions attempted to assist her, Rasch struck him with the gun. Rasch then ordered everyone to stand behind the bar, place their money on the bar, and lie down. One of the students grabbed Rasch and wrestled him to the floor while others summoned the police. After the police arrived, Rasch was taken to the hospital and treated for lacerations he received while being apprehended.

As police interviewed witnesses, Glenna Preston drove up in front of the bar and told an officer that she had been there earlier "with someone else." The officer took Preston to the hospital to see if she could identify the robber. At the hospital emergency room, Preston initially denied knowing Rasch. Feeling Preston was lying, the officer arrested her as an accomplice to the crime, and then handcuffed her. When Preston stated that she should take another look to see if she could identify the robber, the officer took her back into the emergency room. Preston walked over to Rasch and stated, "Look what you've got me into." Rasch answered, "Sorry I got you into this mess." At trial, Rasch's incriminating statement was admitted. All eight persons present at the bar positively identified Rasch as the robber. Rasch was convicted of all counts.

Rasch first contends that the complaint was jurisdictionally defective and his conviction for aggravated robbery void because in each of the four aggravated robbery counts the complaint failed to allege an essential element: that the taking was by force or threat of harm. Robbery is defined as the taking of property

from the person or presence of another by threat of bodily harm to his person or the person of another or by force. K.S.A. 21-3426. Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. K.S.A. 21-3427.

Each of the counts filed against defendant stated:

"Count I: . . . feloniously and willfully take property, to wit: [$5.00] in cash from the person of [John M. Paulsen] while the said Kenneth Rasch was armed with a dangerous weapon, to-wit: a .32 caliber handgun, contrary to K.S.A. 21-3427 the penalty sections being K.S.A. 21-4501(b) and 21-4503(1)(a) a Class B Felony."

Nearly two months before trial, the prosecutor recognized the omission in the complaint and orally moved to amend the charges. Without objection from defendant, a journal entry was filed which stated:

"NOW ON THIS 1st day of December, 1986, this matter comes on upon the oral motion of the State of Kansas to amend the complaints in Count I of 86 CR 2233 and Counts I, II and III in 86 CR 2239 by adding the language 'by force' after the word property in the first sentence of each count and to amend Count IV of 86 CR 2239 by adding the language 'by force' after the word crime in the fourth sentence of said count. The State of Kansas appears by Ty Kaufman, McPherson County Attorney; the defendant appears in person and with his counsel, John B. Klenda.

"THEREUPON, the State makes its argument and the defendant indicates that he has no objection to the amendments as proposed by the State and the Court having heard the arguments and statements of counsel ORDERS that the complaints in 86 CR 2233 and 86 CR 2239 be amended by adding the language 'by force' at the places indicated herein.

"IT IS SO ORDERED."

Conceding that the complaints as originally filed lacked the statutory language "[b]y threat of bodily harm. . . or by force," the State argues that the journal entry cured the defective complaint.

Historically, the purpose of the information or complaint was twofold: (1) to disclose sufficient factual information to enable a magistrate to make an intelligent and impartial finding that there is probable cause to believe that a specific crime has been committed by the defendant and (2) to inform the defendant of the particular offense alleged to have been committed and to protect him against double jeopardy. *State v. Jones,* 242 Kan. 385, 394, 748 P.2d 839 (1988); 41 Am. Jur. 2d, Indictments and Informations § 3, p. 882.

Early Kansas cases held that an information was sufficient if it fairly apprised the defendant of the crime charged against him and was definite enough so that the court would have no trouble in ascertaining the correct sentence to impose. *State v. McCarthy*, 124 Kan. 20, 257 Pac. 925 (1927); *State v. Hutzel*, 108 Kan. 456, 195 Pac. 887 (1921). In *State v. Neer*, 169 Kan. 743, 222 P.2d 558 (1950), the defendant contended that the information charging him with burglary was insufficient in that it did not contain the element of "entering." This court concluded that the information, which charged defendant with breaking into a building was sufficient, and that no information would be found insufficient which did not substantially prejudice the rights of the defendant. 169 Kan. at 746. A conviction based on a complaint or information which did not substantially prejudice the rights of a defendant was valid if the jury had been properly instructed on the elements of the crime.

*State v. Minor*, 197 Kan. 296, 416 P.2d 724 (1966), changed the law regarding the sufficiency of complaints. Minor was charged with first-degree manslaughter. The complaint alleged first-degree manslaughter as defined by the then-controlling statute, K.S.A. 21-407 (Corrick), which stated:

"The killing of a human being without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration or attempt to perpetrate any crime or misdemeanor, not amounting to a felony, in cases where such killing would be murder at the common law, shall be deemed manslaughter in the first degree."

Raising the issue *sua sponte*, the *Minor* court took exception to the fact that the complaint failed to allege that the killing described would be murder at common law and reversed Minor's conviction, stating:

"In Kansas all crimes are statutory and the elements necessary to constitute a crime must be gathered wholly from the statute. Where an information, as here, fails to allege an essential element of manslaughter in the first degree, it cannot be cured by the court or the parties proceeding to trial, as if the information did charge manslaughter in the first degree, and a judgment of conviction for manslaughter in the first degree based upon an information which does not charge such offense is void for lack of jurisdiction of the subject matter." 169 Kan. at 299.

Since *Minor*, this court has reversed a number of criminal convictions on the basis that the complaints failed as jurisdictional instruments. Rasch relies upon *State v. Howell & Taylor*,

226 Kan. 511, 601 P.2d 1141 (1979), where defendants appealed from their convictions of aggravated robbery, arguing that even though the information alleged an unlawful, willful, and felonious taking while armed with a dangerous weapon, it was jurisdictionally defective because it failed to allege that the taking was done by force or threat of bodily harm. Citing *Minor*, the *Howell & Taylor* court found the failure to include in the information the element of taking by force or by threat of bodily harm omitted an essential element of the crime, and this court reversed defendants' convictions. The court further noted that neither the evidence introduced at trial nor the jury instructions could cure the jurisdictional deficiency of an information. See *State v. Slansky*, 239 Kan. 450, 720 P.2d 1054 (1986), and *State v. Jackson*, 239 Kan. 463, 721 P.2d 232 (1986).

Prosecutions in the district court are upon a complaint, indictment, or information. The charging document is a plain and concise written statement of the essential facts constituting the crime charged, and may be in the language of the statute. It states for each count the official or customary citation of the statute, rule or regulation, or provision of the law which the defendant is alleged to have violated. Error in the citation or its omission is not grounds for dismissal of the charging document or for reversal of a conviction if the error or omission did not prejudice the defendant. The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. K.S.A. 1987 Supp. 22-3201.

By statute, the only pleadings required to be filed by the State in a criminal proceeding are the complaint, information, or indictment, and the bill of particulars when ordered. Defenses and objections based on defects in the institution of the prosecution or in the complaint, information, or indictment other than that it fails to show jurisdiction in the court or to charge a crime may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as provided by statute constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the complaint, information, or indictment to charge a crime shall be noticed by the court at any time during

the pendency of the proceeding. A plea of guilty or a consent to trial upon a complaint, information, or indictment shall constitute a waiver of defenses and objections based upon the institution of the prosecution or defects in the charging document other than it fails to show jurisdiction in the court or to charge a crime. K.S.A. 22-3208.

The State claims that the oral motion to amend the complaint and the subsequent journal entry cured the insufficiency of the complaint. The State argues because there was no motion to amend the defective complaint in *State v. Howell & Taylor*, that case is not controlling. We agree.

In *State v. Wilson*, 240 Kan. 606, 731 P.2d 306 (1987), this court indicated a willingness to accept an oral amendment to cure a jurisdictionally deficient information. Wilson was charged with murder in the first degree and convicted of murder in the second degree. The information omitted the statutory requirement that defendant acted maliciously, deliberately and with premeditation. This court found that the information charged neither first-degree murder nor any other degree of criminal homicide. During the trial, the prosecutor suggested that the information needed to be amended, but made no written or oral motion to amend the information. The trial judge stated, "The State's motion to amend to conform to the evidence is sustained." The State never stated on the record the substance of or the precise wording which the State wished to insert in or strike from the information. Because the record was silent as to the exact change the prosecutor wished to make, the *Wilson* court found that the defective information had never been amended to charge a crime, and then stated:

"Informations are required to be in writing, and may be amended at any time with leave of court before verdict or finding 'if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced.' K.S.A. 1985 Supp. 22-3201(2) and (4)." 240 Kan. at 608.

"Where leave is granted to the prosecution to amend an information, the amendment must be made either (a) by filing an amended information, or (b) by striking out or writing in the pertinent matter by interlineation upon the document on file." 240 Kan. at 608.

Here, on the record, the prosecutor made a specific motion to amend the complaint to include the language "by force" and specified the particular places in the complaint where the amendment was to be inserted. The court inquired whether the

defendant had any objection and defendant answered no. Four days later, and nearly two months before trial, a written journal entry, approved by Rasch's counsel, was filed with the court noting the amendment with particularity and specifying the exact places in the complaint where the amended language was to be inserted.

When the defendant and his attorney are present and permission is obtained from the judge, the State may orally amend the complaint or information any time before the verdict or finding, if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. When the jury has been properly instructed on the elements of the crime, a complaint or information which the State has orally amended to correct a deficiency is valid unless the substantial rights of the defendant are prejudiced. The amendment to the complaint or information may be shown by interlineation on the complaint or information, by the filing of an amended complaint or information, or by a journal entry stating the amendment to the complaint or information. We agree with the State's reasoning that its oral motion stating the amendment, followed by a written journal entry containing the amendment made on the record with the defendant and his attorney present and later approved by defendant's counsel, gave Rasch adequate notice of the crimes with which he was charged and satisfied all jursdictional requirements.

Rasch also claims that since the officer had not advised him of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), the incriminating statement he made to his girlfriend Preston in the hospital emergency room should have been suppressed and that its admission was reversible error. Rasch argues that he was the focus of the investigation at the time the statement was made and that the statement was "extracted" from him by "forcing" Preston to become a surreptitious informant. He claims the officer's acts in this case were similar to police practices condemned in *Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964), and *State v. McCorgary,* 224 Kan. 677, 585 P.2d 1024 (1978).

To recapitulate: After the crime had been committed, Glenna Preston drove up to the club. She stated to the police officer that she had been at the club earlier. Up to that point, the police

knew that they had apprehended the man who had robbed the individuals in the club, but had been unable to identify the defendant by name. The officer then took Preston to the hospital to see if she could assist with the identification. At the emergency room, Preston initially stated that the defendant's name was Kevin. The officer then asked if defendant was the person who had accompanied her to the club. Preston stated she didn't recognize the defendant. Defendant then stated: "[W]ho's she, what's she doing in here, get out of here."

The officer and Preston left the emergency room. The officer felt Preston was lying. He handcuffed Preston and arrested her as an accessory to the crime. The officer testified that, at that time, Preston stated maybe she could identify the defendant. She walked over to defendant, held up the handcuffs and stated: "Look what you've got me into." Defendant answered: "Sorry I got you into this mess. Thanks for the ride."

Defendant's attempt to equate these facts with the facts of *Massiah* and *McCorgary* must fail. *Massiah* and *McCorgary* both dealt with the clandestine interrogation of an indicted defendant in the absence of counsel. The facts of the case at bar do not rise (or fall) to this level. The defendant was in custody, but Preston was not an undercover agent planted to trick the defendant into confessing. Here, the purpose of Preston's presence was identification, not interrogation. She was not forced to re-enter the emergency room, but volunteered to do so. Defendant's statements were not elicited by interrogation, but rather were voluntary, spontaneous statements. Incriminating statements which are made freely and voluntarily without threat of force or compulsion are not barred by the failure to inform a defendant of his rights under *Miranda. State v. Sparks*, 217 Kan. 204, Syl. ¶ 5, 535 P.2d 901 (1975).

Defendant's conviction was based on the identification by eight eyewitnesses, all of whom positively identified defendant as the perpetrator. The only defense raised by defendant was the defense of voluntary intoxication. We have no hesitation in holding that the admission into evidence of the defendant's voluntary statement to his girlfriend was proper.

Affirmed.