No. 119,514

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ENRIQUE G. SANDATE,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

SYLLABUS BY THE COURT

1.

Subject matter jurisdiction is vested by both statute and the Kansas Constitution and establishes the court's authority to decide a particular type of action.

2.

Failure of the arresting officer's DC-27 submission to comply with K.S.A. 2019 Supp. 8-1002(a) does not deprive the KDOR or the courts of subject matter jurisdiction over the driver's license suspension action.

3.

An officer substantially complies with K.S.A. 2016 Supp. 8-1001(k) when the officer reads an implied consent advisory to the driver that omits the items listed in subsections (k)(2) ("the opportunity to consent to or refuse a test is not a constitutional right") and (k)(4) (if the driver refuses the test, the officer may charge the driver with a separate crime for refusal).

1

4.

Regardless of advising drivers that they are required to take a test of breath, blood, or urine if requested by police, K.S.A. 2016 Supp. 8-1001(k) makes it clear that testing under the implied consent laws is voluntary. Accordingly, providing the advisory as set out in K.S.A. 2016 Supp. 8-1001(k)(1) substantially complies with the implied consent statutory scheme.

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed July 17, 2020. Affirmed.

*Thomas J. Bath Jr.*, of Bath & Edmonds, P.A., of Overland Park, for appellant.

*Donald J. Cooper*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, C.J., WARNER, J., and LAHEY, S.J.

ARNOLD-BURGER, C.J.:  Enrique G. Sandate appeals the district court's decision affirming the administrative suspension of his driver's license. He makes two claims. First, he contends that the KDOR lacked subject matter jurisdiction to suspend his driver's license. Second, he asserts that the notice he received before refusing a breath test did not substantially comply with Kansas implied consent laws. After a review of Sandate's claims, we reject them and affirm the suspension of his driving privileges.

FACTUAL AND PROCEDURAL HISTORY

In the early morning hours on November 9, 2016, Officer Dane Jordan of the Overland Park Police Department witnessed a vehicle twice failing to maintain its lane and changing lanes without signaling. Officer Jordan initiated a traffic stop and ultimately arrested the driver, Sandate, because he admitted to consuming alcohol,

showed signs of impairment, failed several field sobriety tests, and refused a preliminary breath test.

Sandate refused to provide a breath sample after Officer Jordan read and provided a copy of the revised DC-70, an implied consent advisory form revised in February 2016 (revised DC-70). Paragraph 1 of the revised DC-70 provided: "Kansas Law [K.S.A. 2016 Supp. 8-1001] requires you to submit to and complete one or more tests of breath, blood, or urine to determine if you are under the influence of alcohol or drugs or both." Officer Jordan served Sandate with an "Officer's Certification and Notice of Suspension" (DC-27), which stated in paragraph 3 that "[t]he person was presented oral and written notice as required by [K.S.A. 2016 Supp. 8-1001(k)] and amendments thereto."

Sandate requested an administrative hearing to review the suspension of his driving privileges. He made two arguments. First, he asserted that his constitutional rights were violated "when he was advised [on the revised DC-70] that he was *required* to submit to a test of breath, blood, or urine." Second, he contends that the revised DC-70 did not substantially comply with the notice requirements of K.S.A. 2016 Supp. 8-1001 because one of the statutory advisories was omitted. The KDOR affirmed the suspension.

Next, Sandate petitioned for judicial review of the KDOR's decision, requesting a new hearing and reasserting the same arguments previously made at the administrative hearing. Sandate moved for summary judgment on these claims, also asserting that the revised DC-70's noncompliance with K.S.A. 2016 Supp. 8-1001 deprived the KDOR of jurisdiction to suspend his license.

In its rulings, the district court found the KDOR had jurisdiction because the revised DC-70 substantially complied with K.S.A. 2016 Supp. 8-1001(k)(4) and denied Sandate's petition. The court found that "the amended DC-70 and [K.S.A. 2016 Supp. 8-1001(k)] with the unconstitutional portions stricken make it clear that petitioner has

3

choice whether or not to submit to testing, even with the 'require' language present in [K.S.A. 2016 Supp. 8-1001(k)(1)]."

Ultimately, the matter proceeded to a hearing on stipulated facts, after which the court conclusively denied Sandate's petition for review, thus affirming the suspension of his driving privileges.

Sandate timely appealed.

ANALYSIS

*KDOR had subject matter jurisdiction to suspend Sandate's driver's license.*

Sandate first argues the district court erred in concluding the KDOR had subject matter jurisdiction to suspend his license because Officer Jordan failed to provide all of the implied consent advisories in K.S.A. 2016 Supp. 8-1001(k). As a result, Sandate contends the DC-27 was not accurately certified and therefore the KDOR did not obtain subject matter jurisdiction to suspend his driving privileges.

Sandate raises the issue of jurisdiction for the first time on appeal. But subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *Jahnke v. Blue Cross & Blue Shield of Kansas*, 51 Kan. App. 2d 678, 686, 353 P.3d 455 (2015). Whether jurisdiction exists is a question of law over which this court exercises unlimited review. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015). To the extent that the issue requires this court to interpret Kansas statutes, it raises a question of law subject to unlimited review. *Pratt v. Kansas Dept. of Revenue*, 48 Kan. App. 2d 586, 588, 296 P.3d 1128 (2013).

4

Sandate mainly relies on *Wall v. Kansas Dept. of Revenue*, 54 Kan. App. 2d 512, 513-14, 401 P.3d 670 (2017), in which a panel of this court determined K.S.A. 2016 Supp. 8-1002(f) imposes upon the KDOR an "independent duty to examine" a certifying officer's DC-27 form "*upon receipt*," no matter if a driver requests an administrative hearing upon receiving a notice of suspension. This mandate implicates subject matter jurisdiction because "'[s]ubject matter jurisdiction is the power of the court to hear and decide a particular type of action.' *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 (1985)." *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016).

In *Wall*, the certifying officer indicated a breath test failure on the DC-27, but the attached test results showed no sample was taken. In other words, the DC-27 erroneously reflected the driver had failed a breath test, but he had actually refused the test. In addition, the officer failed to mark several check boxes required for the DC-27 to comply with K.S.A. 2016 Supp. 8-1002(a). As a result, the panel concluded subject matter jurisdiction was lacking and affirmed the district court's reversal of the suspension. 54 Kan. App. 2d at 515.

In another recent case, the DC-27 at issue lacked the certifying officer's initials, signature, and several check marks because the triplicate carbon copy form failed to transfer down to the copy given to the driver. *Stutsman v. Kansas Dept. of Revenue*, No. 119,528, 2019 WL 1303063, at *5 (Kan. App. 2019) (unpublished opinion). There, the panel determined the certification was not substantially compliant because the DC-27 given to the driver was missing that essential information, and thus the KDOR lacked jurisdiction to suspend his driving privileges. 2019 WL 1303063, at *4-5.

The determinations made by the panels in these cases suggest that the statute only requires the KDOR to review the DC-27 at this early stage for easily discernable errors, like missing signatures or checkmarks and factual discrepancies. If those items are missing, KDOR is required to dismiss the action. *Walls* and *Stutsman* both hold that

5

because KDOR is required to dismiss the action, its failure to do so leaves it without jurisdiction to conduct a requested administrative hearing. We disagree.

Before addressing why we are holding contrary to two cases from this court, one published and one not, we begin by noting that one Kansas Court of Appeals panel is not bound by another panel's decision. See *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018). Each panel conducts an independent analysis of the issues presented and comes to its own conclusions.

Subject matter jurisdiction is vested by statute and the Kansas Constitution and establishes the court's authority to decide a particular type of action. *Dunn*, 304 Kan. at 811; *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 92, 106 P.3d 492 (2005). The KDOR has the authority to suspend driver's licenses and conduct administrative hearings regarding those suspensions. See K.S.A. 2019 Supp. 8-1002; K.S.A. 2019 Supp. 8-1020; K.S.A. 2019 Supp. 8-259.

There are two primary components to the DC-27 form:  a notification aspect and a certification aspect. The notification aspect arises under K.S.A. 2019 Supp. 8-1001(k) and contains information an officer must advise the driver of before administering an alcohol test. The certification aspect arises under K.S.A. 2019 Supp. 8-1002(a) and concerns matters occurring after the test failure or test refusal has already taken place. See *Pratt*, 48 Kan. App. 2d at 588-89.

The DC-27 is the functional equivalent of a charging document. It gets the ball rolling on the suspension of driving privileges that accompany a DUI arrest. Without the filing of the DC-27 with the KDOR, a driver's license suspension for an alcohol test refusal or failure does not happen. And just as the goal of a charging document is to inform the defendant of the alleged offense, so the DC-27 provides notice to the driver of the reasons for the suspension action and the evidence that supports it. See *State v. Rasch*,

243 Kan. 495, 497, 758 P.2d 214 (1988) (purpose of complaint is to fairly apprises the defendant of the crime charged). The driver may challenge the sufficiency of the certification at the administrative hearing. K.S.A. 2019 Supp. 8-1020(h).

The Kansas Supreme Court has held that charging documents do not bestow or confer subject matter jurisdiction. *Dunn*, 304 Kan. 773, Syl. ¶ 1. Likewise, defects in a complaint or indictment do not deprive a court of its power to adjudicate a case. See *United State v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002). Even the failing to swear to or verify the complaint does not deprive the court of jurisdiction. *State v. Graham*, 247 Kan. 388, 394, 799 P.2d 1003 (1990).

Like a complaint, once the DC-27 is filed with the KDOR, the KDOR and subsequent reviewing courts have subject matter jurisdiction over the driver's license suspension subject matter; and that makes sense. The KDOR and the courts have to have jurisdiction to make the decision regarding the adequacy of the DC-27. Perhaps KDOR should have dismissed the case upon filing and should never have required the licensee to request and have an administrative hearing, but that can only be determined by an administrative or judicial officer's decision. An error in KDOR's decision does not impact its jurisdiction to make it. And the KDOR and the courts are not somehow deprived of that jurisdiction because the DC-27 was insufficient. In discussing subject matter jurisdiction over criminal complaints, the Supreme Court has noted that "even prejudicial deficiencies in due process or notice do not render the outcome of a prosecution void for lack of subject matter jurisdiction." *Dunn*, 304 Kan. at 814. Accordingly, we find that the KDOR had subject matter jurisdiction to suspend Sandate's driver's license. The question is whether it properly did so. We turn to that question next.

*The district court did not err when it found that the revised DC-70 implied consent advisory substantially complied with the provisions of K.S.A. 2016 Supp. 8-1001.*

Sandate's primary argument on appeal is that the revised DC-70 did not substantially comply with Kansas implied consent laws, challenging the advisory in two respects: first, that it improperly advised him he was "required" to submit to testing; and second, that it omitted two of the subparts required by K.S.A. 2016 Supp. 8-1001(k).

Generally, this court will review a district court's decision in an administrative driver's license suspension by "ascertaining whether substantial competent evidence in the record supported the district court's factual findings and whether the conclusion derived from those findings is legally correct." *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). But where an issue involves statutory and constitutional interpretation, that presents a question of law subject to unlimited review. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015).

*Sandate has failed to properly preserve his challenge to the omission of K.S.A. 2016 Supp. 8-1001(k)(2).*

To begin, part of Sandate's argument is not properly before this court based on a review of the record. There is no dispute that two subparts of K.S.A. 2016 Supp. 8-1001(k) were omitted from the revised DC-70 given to Sandate, specifically subparts (k)(2) ("the opportunity to consent to or refuse a test is not a constitutional right") and (k)(4) (if the driver refuses the test, the officer may charge the driver with a separate crime for refusal). But the pleadings available in the record reveal that Sandate only challenged the omission of subpart (k)(4). Likewise, the district court's rulings on this issue only mention the omission of subpart (k)(4).

8

Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34) requires appellants to explain why an issue not raised below should be considered for the first time on appeal. Parties who ignore Rule 6.02(a)(5) "risk a ruling that an issue improperly briefed will be deemed waived or abandoned." *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). In *Williams*, our Supreme Court warned that Rule 6.02(a)(5) will be strictly enforced. See 298 Kan. at 1085.

Thus, because Sandate challenges the omission of K.S.A. 2016 Supp. 8-1001(k)(2) for the first time on appeal and offers no basis for why this court should consider an issue not raised before the district court, that argument is considered waived and abandoned.

*The district court did not err when it found that, despite the omission of one statutorily mandated notice in the implied consent advisory, the officer substantially complied with the provisions of K.S.A. 2016 Supp. 8-1001.*

Under K.S.A. 2016 Supp. 8-1001(k), an arresting officer must provide a list of nine notices before administering a test of a person's blood, breath, urine, or other bodily substance to determine the presence of alcohol or other drugs in the driver's system. Sandate challenges the omission of subpart (k)(4) in the revised DC-70, which informs the driver of possible criminal penalties for refusing to submit a breath, blood, or urine test. See K.S.A. 2016 Supp. 8-1001(k)(4).

This omission was prompted by two important decisions released by the Kansas Supreme Court February 2016, prompting the KDOR to begin using the revised DC-70 at the request of the Attorney General to incorporate the holdings. In *State v. Ryce*, 303 Kan. 899, 963-64, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*), the court held that the statute imposing criminal penalties on a driver if that individual withdrew consent or refused to submit to a breath test was facially unconstitutional. Then, in *State v. Nece*, 303 Kan. 888, 897, 367 P.3d 1260

9

(2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*) , the court held that giving unconstitutional implied consent advisories before a defendant's consent leads to coercion.

The KDOR does not dispute that the revised DC-70 omitted certain provisions, explaining that their omission was "in direct response to the Kansas Supreme Court finding the statute on which it was based to be unconstitutional." Likewise, Sandate concedes the KDOR revised the DC-70 to accommodate these decisions. Nonetheless, Sandate asserts the invalidated provisions needed to be given to comply with K.S.A. 2016 Supp. 8-1001(k).

This argument is unpersuasive because Kansas courts have never required *strict* compliance with the implied consent advisory statute, instead opting for *substantial* compliance. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 472, 447 P.3d 959 (2019) (citing *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 [1988]). "To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute." *Barnhart*, 243 Kan. at 213. The essentials, i.e., the purpose, of the implied consent advisories are to inform a driver of the law before his or her submission to a requested test and any potential consequences that may result. Similarly, K.S.A. 2016 Supp. 8-1001(v) explicitly provides that "[t]his act is remedial law and shall be liberally construed to promote public health, safety and welfare." Accordingly, requiring a law enforcement officer to comply strictly by informing a driver about unconstitutional and unenforceable statutory provisions would subvert that purpose. Rather, an officer substantially complies with the statutory scheme by adhering to the most recent changes in the law, whether that change is strictly reflecting in the statute or not.

Sandate tries to get around this by asserting that the unconstitutional advisories still applied to him and needed to be given because his breath test refusal occurred

10

between the Kansas Supreme Court granting motions for rehearing of *Ryce* and *Nece* and the decisions reaffirming those rulings. In arguing that he should have been read the unconstitutional provisions, Sandate essentially asks the State to violate his constitutional rights. We do not promote that folly for a few reasons.

First, when interpreting statutes, this court must seek to avoid absurd or unreasonable results. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). Requiring law enforcement officers to recite the unconstitutional portions would defeat the primary purpose of the statute and lead to drivers being misinformed about the law. This conclusion is supported even more by the severability clause in K.S.A. 8-1007:

> "This act shall be construed as supplemental to existing legislation; and if any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional, it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section."

Second, the fact that this is a civil administrative proceeding arising from a breath test refusal is notable. In effect, the revised DC-70 advised Sandate that refusing to submit to testing would lead to a suspension of his driving privileges, which is consistent with the essentials of K.S.A. 2016 Supp. 8-1001(k). Sandate does not suggest, nor is there anything in the record to show, that the threat of criminal penalties would have affected his decision to refuse testing or that he was subjected to criminal penalties for refusal. See K.S.A. 2016 Supp. 8-1020(t); see also *Martin*, 285 Kan. at 642 (recognizing that "civil and criminal proceedings are wholly separate from one another and are intended to serve two different purposes").

In sum, the omitted subsection discussing criminal penalties for test refusal were invalidated by the *Ryce* and *Nece* decisions and thus is no longer an essential component

11

of the statute. The district court correctly determined the revised DC-70 substantially complied with the statutory requirements despite the omission of K.S.A. 2016 Supp. 8-1001(k)(4).

*The arresting officer did not invalidate Sandate's refusal to take the test by informing him, in compliance with K.S.A. 2016 Supp. 8-1001(k)(1), that he was "required" to submit to testing.*

Sandate also challenges the paragraph of the revised DC-70 which advised him that "Kansas Law [K.S.A. 2016 Supp. 8-1001(k)(1)] requires you to submit to and complete one or more tests of breath, blood, or urine to determine if you are under the influence of alcohol or drugs or both." He contends this is a misstatement of law, arguing that nothing in K.S.A. 2016 Supp. 8-1001 *requires* drivers to submit to a test. In fact, the last question asked of a driver is "Will you take the test?" See K.S.A. 2016 Supp. 8-1001(m).

The parties seem to agree that testing under the implied consent laws is voluntary but essentially disagree about the effect of the term "require" as used in K.S.A. 2016 Supp. 8-1001(k)(1), which provides:

"(k) Before a test or tests are administered under this section, the person shall be given oral and written notice that:
(1) Kansas law requires the person to submit to and complete one or more tests of breath, blood or urine to determine if the person is under the influence of alcohol or drugs, or both."

As the KDOR points out and the district court determined in its ruling on this issue, the revised DC-70 directly mirrors the statutory language. Sandate acknowledges the text of this provision but asserts he was inaccurately advised of the law and thus his suspension must be set aside. He claims subpart (k)(1) is itself incorrect because other

12

sections require the officer to "request" the person submit to a test after providing the advisory information. See K.S.A. 2016 Supp. 8-1001(b), (m). He cites as support *Whigham v. Kansas Dept. of Revenue*, No. 117,043, 2018 WL 1884742 (Kan. App. 2018) (unpublished opinion), *petition for rev. granted* 308 Kan. 1602 (2018).

In that case, Whigham made the same argument as Sandate does now:  that the use of "require" in the DC-70 advisories is a misstatement of law based on the use of "request" in other provisions of the statute. 2018 WL 1884742, at *3. Sandate also repeats Whigham's argument that the panel cannot overlook the Legislature's choice to switch from directory language to mandatory language when considering legislative intent. See 2018 WL 1884742, at *4; *Walker v. Brizendine*, No. 114,776, 2016 WL 5012505, at *2-3 (Kan. App. 2016) (unpublished opinion).

The panel in *Whigham* then considered the definitions of "require" and other forms of that term, noting while "the term required can be read to mean something similar to a request," that the definitions provided by the KDOR as support "mostly include definitions that insinuate something mandatory." 2018 WL 1884742, at *5. In contrast, the panel discussed the proposed amendments for the 2018 legislative amendments swapping "'requires'" for "'allows,'" calling the substituted language "comparatively a more directional term rather than a mandatory term, suggesting the original use of required was intended as a mandatory term." 2018 WL 1884742, at *5-6. Ultimately, the panel concluded Whigham's argument about legislative intent was more persuasive but was "foreclosed" by the arresting officer's "good-faith reliance on the advisories." 2018 WL 1884742, at *6.

In response, the KDOR contends interpreting "required" as a mandatory term "would insert more ambiguity in the interpretation of the statute" because the statute consistently allows a driver to refuse a test. The KDOR focuses on the use of "required"

13

in context, asserting the other provisions of the revised DC-70 must be considered because they make it clear that a driver ultimately gets to choose whether to refuse a test.

Sandate also points out the panel's reliance on the good-faith exception to the exclusionary rule is "curious" given the panel's reluctance to apply the exclusionary rule when determining whether the results of Whigham's failed breath should have been suppressed. See *Martin*, 285 Kan. at 646 (holding that exclusionary rule does not apply in the context of administrative driver's license suspension cases); but see *Jarvis v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 1081, 1096, 442 P.3d 1054 (2019) (discussing 2016 statutory amendment that allows courts to consider a "constitutional issue" like "the lawfulness of the law enforcement encounter" in such cases), *rev. granted* 310 Kan. 1062 (2019).

That said, this court is not bound by the panel's reasoning in *Whigham.* See *Fleming*, 308 Kan. at 706 (one Kansas Court of Appeals panel is not bound by another panel's decision). And we adopt a different interpretation; one more aligned with that propounded by KDOR.

We are asked to determine whether a warning given under K.S.A. 2016 Supp. 8-1001(k)(1) substantially complies with the statutory scheme of implied consent law as set out in K.S.A. 8-1001 et seq. The advisory given here was presented in the language of (k)(1), so it explicitly complied with (k)(1). Instead, Sandate argues that the advisory is a misstatement of the law and, as such, it did not substantially comply with the statutory scheme of implied consent law. Because there was not substantial compliance, he argues he is not required to show he was prejudiced by the statement. See *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 682, 840 P.2d 448 (1992).

First, we agree that under the plain language of the statute, advising a driver that he or she is required to submit to and complete a requested test is a misstatement of the

14

law. See *Ryce II*, 306 Kan. at 695 ("Significantly, while the statutory implied consent advisory informs the driver he or she is required to take a blood alcohol test or face consequences, . . . an officer can only 'request' that a driver submit to a test."). Although a driver is "deemed to have consented," the driver is not required to consent. See K.S.A. 2016 Supp. 8-1001(a) ("Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this article," to submit to a breath, blood, or urine test.). But just as the statute provides that the driver is deemed to have given consent, that consent is "subject to the provisions" of the statute. K.S.A. 2016 Supp. 8-1001(a). And the implied consent advisory goes on to discuss the consequences of refusal of an officer's test "request." K.S.A. 2016 Supp. 8-1001(k)(4), (5), (7).

Rather than isolating a particular provision, we must examine the statutory scheme, considering "various provisions of an act in pari materia with a view to reconciling and bringing the provisions into workable harmony, if possible." *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012); *State v. Cole*, 238 Kan. 370, Syl. ¶ 1, 710 P.2d 25 (1985) ("To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious and sensible."). "[W]ords are given meaning by their context." Scalia and Garner, Reading Law: The Interpretation of Legal Texts, p. 56 (2012). Accordingly, K.S.A. 2016 Supp. 8-1001(k)(1) should not be read in isolation. As the district court noted below and the parties agree, the other provisions of K.S.A. 2016 Supp. 8-1001 make it clear that testing under the implied consent laws is voluntary. In fact, the meaning of "requires" is limited by paragraphs 3 and 8 of the revised DC-70. "If you refuse" your driving privileges will be suspended and "if you refuse" your refusal may be used against you at trial. See K.S.A. 2016 Supp. 8-1001(k)(3), (7). And most telling is the last provision, "Will you take a test?" These provisions, when read together, clarify that a person may refuse the test, but there are consequences to that refusal.

15

The statute consistently directs law enforcement officers to "request a person to submit to a test." See K.S.A. 2016 Supp. 8-1001(b), (c), (h), (i), (m). Likewise, officers are required to read the implied consent advisories on the DC-70—disregarding the provisions invalidated as unconstitutional, as discussed—which reference the driver's ability to refuse testing and potential consequences of test refusal or failure. See K.S.A. 2016 Supp. 8-1001(k)(5)-(9). Reading these provisions as a whole, a reasonable person would conclude that he or she retains the right to refuse testing. In fact, the DC-70 explicitly gives the driver a choice at its conclusion whether to refuse testing. So, while read in isolation K.S.A. 2016 Supp. 8-1001(k)(1) may be a misstatement of the law, when read in context with the rest of subsection (k) its meaning is clarified.

Moreover, Sandate's actions bolster this interpretation. The language did not coerce Sandate into taking the test. He refused the requested test. He clearly understood the language to mean he could refuse.

This is not a case like *Meigs* upon which Sandate relies. In *Meigs*, the officer advised Meigs that if he refused the test his license would be suspended for 180 days. But this was an old advisory. The statute had changed to require suspension for at least a year. Meigs refused the test. The Supreme Court found that the officer had not substantially complied with the statute because the statute required that he advise Meigs that his license would be suspended for at least a year—double the amount of time he told Meigs. Meigs was not required to show prejudice when there was not substantial compliance with the statutory language required. *Meigs*, 251 Kan. at 682. Here the officer complied with the legislative mandate by reading the advisories to Sandate exactly as they are set out in the statute. The officer was required by statute to provide the implied consent advisories. He did. Sandate refused the requested test. Those advisories, when read in total, substantially comply with the statute. That was all that was necessary to suspend Sandate's driver's license.

16

For these reasons, we find the district court did not err by determining the revised DC-70 provided to Sandate substantially complied with Kansas implied consent laws. First, the omitted subsection referencing criminal penalties for test refusal was invalidated by Kansas Supreme Court decisions and therefore not essential. Likewise, including the invalidated provision in the revised DC-70 would have been an inaccurate statement of the law. Second, the use of the term "requires" in the first sentence of the revised DC-70 mirrors the statutory language, which when read in context makes it clear that a driver's choice to submit to testing under the implied consent framework is voluntary.

Affirmed.