NOT DESIGNATED FOR PUBLICATION

No. 122,889

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RICHARD VANCE,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed December 17, 2021. Affirmed.

*John Ivan*, of John Ivan Law, of Shawnee Mission, for appellant.

*Nhu Nguyen*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before BUSER, P.J., HILL and ISHERWOOD, JJ.

BUSER, J.:  This is an appeal by Richard Vance of the district court's order affirming the Kansas Department of Revenue's (KDOR) suspension of his driving privileges. Upon our review, we hold there was jurisdiction for the KDOR and district court to consider the petition for review, and there was substantial competent evidence to support the district court's legal conclusion that the traffic stop, subsequent arrest for driving under the influence (DUI), and request for Vance to provide a urine test were lawful. We decline to review other claims raised by Vance for the first time on appeal, including his assertion that K.S.A. 2018 Supp. 8-1001(a)-(b)(1) is unconstitutional. Accordingly, we affirm.

1

This case arose when Vance was stopped by Johnson County Sheriff's Deputy Edward Blake at 1:57 a.m. on October 13, 2018, while driving on Highway 169 in Olathe. Deputy Blake testified he began following Vance because he was traveling slower than the posted speed limit and was braking for no apparent reason. Deputy Blake stopped Vance for two traffic violations—making an improper turn and failing to use a turn signal when he switched lanes.

Upon stopping his motor vehicle, Vance partially lowered the car window which Deputy Blake testified was noteworthy because drivers who have been drinking alcohol occasionally will try to hide the odor of alcohol in this way. Still, the deputy noticed an odor of alcohol coming from Vance and the motor vehicle. Deputy Blake observed that Vance had bloodshot eyes, difficulty communicating, and poor balance. Shortly after the traffic stop, the dispatcher informed Deputy Blake that Vance had an active arrest warrant pertaining to a prior DUI charge.

Deputy Blake asked Vance to perform various field sobriety tests, including the walk and turn, one leg stand, alphabet recital, and number counting tests. Deputy Blake testified that Vance failed the field sobriety tests. Regarding Vance's difficulty in completing the field tests to evaluate balance and coordination, Vance later testified that, although he did not inform Deputy Blake at the time, he had physical disabilities that prevented his successful completion of the tests.

Vance agreed to take a preliminary breath test (PBT), which he failed with a reading of .088.

While conversing with Vance, Deputy Blake testified that he believed Vance was lying to him. When the deputy asked Vance where he was coming from, Vance stated he

was coming from the QuikTrip. But Deputy Blake concluded that Vance was lying because while the deputy was following Vance, he drove past the convenience store without stopping. Despite the indications that Vance had been recently drinking, Deputy Blake also testified that Vance twice denied drinking alcohol.

Vance later testified that he lied to Deputy Blake about where he was coming from because he was embarrassed and "didn't want anybody to know [he] was leaving a strip club." He also admitted to drinking "one glass of wine" but "didn't feel like [he] would fail the test by drinking one glass of wine and then sitting for, like, two and a half to three hours."

Deputy Blake arrested Vance for DUI and the outstanding warrant in a prior DUI case. Incident to the arrest, the deputy searched Vance and found rolling papers in his pocket. Vance was taken to the detention center, and about an hour later, at Deputy Blake's request, Vance submitted to an Intoxilyzer 9000 breathalyzer test. The result was .073, which is less than the statutory presumption for alcohol intoxication. Deputy Blake then asked Vance to submit to a urine test, which, according to the deputy, Vance refused. Based on this refusal, Vance's driving privileges were suspended.

Vance requested an administrative hearing before the KDOR. On January 15, 2019, the hearing officer affirmed the suspension of Vance's driving privileges. Vance petitioned the district court for judicial review.

Following an evidentiary hearing, the district court affirmed KDOR's decision to suspend Vance's license for refusing a urine test. The district court found Deputy Blake had reasonable suspicion to initiate the traffic stop, reasonable grounds to believe Vance was operating the vehicle while driving under the influence, and it was proper for Deputy Blake to request multiple tests for alcohol or drug consumption. The district court also

found Vance's testimony that he did not refuse the urine test was not credible, and ruled that Vance refused the test.

Vance appeals.

JURISDICTION

Vance argues the KDOR and district court did not have jurisdiction to suspend Vance's driving privileges because the certification and notice of suspension form (DC-27 form) did not substantially comply with K.S.A. 2018 Supp. 8-1002. The KDOR counters that the form met the statutory requirements, and, therefore, jurisdiction was proper.

The district court did not make any findings that the certification and notice requirements of K.S.A. 2018 Supp. 8-1002 were not complied with in this case, or that there was any jurisdictional infirmity with the DC-27 form. On the contrary, the district court found that jurisdiction was proper, rejecting Vance's legal conclusion that there was "an absence of reasonable suspicion or probable cause, and therefore [KDOR] had no jurisdiction to suspend petitioner's license." Of note, Vance's jurisdictional argument that he raises on appeal is different than the one he raised in the district court.

Subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *In re Care & Treatment of Emerson*, 306 Kan. 30, 33, 392 P.3d 82 (2017). Whether jurisdiction exists is a question of law over which this court exercises unlimited review. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015). To the extent the issue requires our court to interpret Kansas statutes, it raises a question of law subject to unlimited review. *Pratt v. Kansas Dept. of Revenue*, 48 Kan. App. 2d 586, 588, 296 P.3d 1128 (2013).

4

When a test to determine alcohol consumption is requested and results in either a refusal or a failure, "a law enforcement officer's certification shall be prepared." K.S.A. 2018 Supp. 8-1002(a). The DC-27 form "is to be used to certify a test refusal or a test failure." If an officer is certifying a test refusal, paragraphs 1-4 of the DC-27 form are statutorily required to be completed. K.S.A. 2018 Supp. 8-1002(a)(1)(A)-(D). Paragraphs 5-7 are not statutorily required but were completed by Deputy Blake. See K.S.A. 2018 Supp. 8-1002(a). Paragraph 8 of the DC-27 form corresponds with the language of K.S.A. 2018 Supp. 8-1002(d)(3), which requires the DC-27 form to contain the date notice was served. The deputy certified paragraph 8, stating he personally served the DC-27 form on Vance on October 13, 2018. In completing this form, Deputy Blake certified that Vance refused a test by initialing paragraphs 1-8.

Paragraphs 9 through 11 of the DC-27 form certify information relating to the administration of a breath test. Under K.S.A. 2018 Supp. 8-1002(a)(3), these paragraphs are required to be certified if a person fails a breath test. Paragraph 9 certifies the testing equipment was certified by the Kansas Department of Health and Environment (KDHE). Paragraph 10 certifies the testing procedures used were in accordance with KDHE requirements. Paragraph 11 certifies that the operator of the testing equipment was certified by KDHE.

The crux of Vance's jurisdictional claim relates to Deputy Blake's initialing paragraphs 9 through 11 on the DC-27 form. These paragraphs "must . . . be completed and certified" if an officer certifies a breath test failure. But since Vance did not fail the Intoxilyzer 9000 test, Vance argues that initialing those 3 paragraphs "renders [Deputy Blake's] certification meaningless and in non-compliance with K.S.A. 8-1002(f)." In the district court, Deputy Blake testified he did not initial those paragraphs because Vance failed a breath test, rather he simply "initialed that the equipment was working."

In support of his jurisdictional argument, Vance relies on *Wall v. Kansas Dept. of Revenue*, 54 Kan. App. 2d 512, 513-14, 401 P.3d 670 (2017), in which a panel of our court determined that K.S.A. 2016 Supp. 8-1002(f) imposes upon the KDOR an "independent duty to examine" a certifying officer's DC-27 form "upon receipt," regardless of whether a driver requests an administrative hearing. This requirement implicates subject matter jurisdiction because "'[s]ubject matter jurisdiction is the power of the court to hear and decide a particular type of action.' *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 (1985)." *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016).

In *Wall*, the certifying officer indicated a breath test failure on the DC-27 form, but the attached test results showed no sample was taken. In other words, the DC-27 form erroneously reflected that the driver had *failed* a breath test, when the driver had *refused* the test. Additionally, the officer failed to check off several boxes required for the DC-27 form to comply with K.S.A. 2016 Supp. 8-1002(a). As a result, the panel concluded that subject matter jurisdiction was lacking and affirmed the district court's reversal of the suspension. 54 Kan. App. 2d at 515.

Vance also relies on *Stutsman v. Kansas Dept. of Revenue*, No. 119,528, 2019 WL 1303063, at *4-5 (Kan. App. 2019) (unpublished opinion), in which another panel of our court determined that the certification of the DC-27 form did not substantially comply with the statute because the form provided to the driver was missing essential information. The DC-27 form at issue lacked the certifying officer's initials, signature, and several check marks because the triplicate carbon copy form failed to transfer down to the copy given to the driver.

In summary, the *Wall* and *Stutsman* panels held that if certain information is missing or erroneous on the DC-27, KDOR is required to dismiss the action. Failure of KDOR to dismiss the action results in a lack of jurisdiction to conduct an administrative hearing. *Sandate v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 450, 453, 471 P.3d 700

6

(2020). However, we are not persuaded that these two cases support Vance's jurisdictional claim.

In contrast, *Sandate*, 58 Kan. App. 2d at 453, supports KDOR's position that subject matter jurisdiction exists in the present case on appeal. According to *Sandate*, *Wall* and *Stutsman* provide that the statute only requires the KDOR to review the DC-27 form for "easily discernable errors, like missing signatures or checkmarks and factual discrepancies." *Sandate*, 58 Kan. App. 2d at 453. The *Sandate* panel disagreed with *Wall* and *Stutsman*, finding "KDOR and the courts are not somehow deprived of that jurisdiction because the DC-27 was insufficient." *Sandate*, 58 Kan. App. 2d at 455. The *Sandate* panel equated the DC-27 form as "the functional equivalent of a charging document." 58 Kan. App. 2d at 454. The panel reasoned:

> "It gets the ball rolling on the suspension of driving privileges that accompany a DUI arrest. Without the filing of the DC-27 with the KDOR, a driver's license suspension for an alcohol test refusal or failure does not happen. And just as the goal of a charging document is to inform the defendant of the alleged offense, . . . the DC-27 provides notice to the driver of the reasons for the suspension action and the evidence that supports it. See *State v. Rasch*, 243 Kan. 495, 497, 758 P.2d 214 (1988) (purpose of complaint is to fairly [apprise] the defendant of the crime charged). The driver may challenge the sufficiency of the certification at the administrative hearing." 58 Kan. App. 2d at 454.

Similar to a criminal charging document, the *Sandate* panel found that errors in a DC-27 form do not necessarily impact KDOR's jurisdiction to review the document and determine its sufficiency. 58 Kan. App. 2d at 455; see *Dunn*, 304 Kan. 773, Syl. ¶ 1 ("Kansas charging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases; the Kansas Constitution does."); see also *United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002) ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case.");

*State v. Graham*, 247 Kan. 388, 394, 799 P.2d 1003 (1990) ("The lack of verification on the complaint is not a defect that deprives the court of jurisdiction.").

Relying on the preceding criminal precedent, the *Sandate* panel found:

"Like a complaint, once the DC-27 is filed with the KDOR, the KDOR and subsequent reviewing courts have subject matter jurisdiction over the driver's license suspension subject matter; and that makes sense. The KDOR and the courts have to have jurisdiction to make the decision regarding the adequacy of the DC-27. Perhaps KDOR should have dismissed the case upon filing and should never have required the licensee to request and have an administrative hearing, but that can only be determined by an administrative or judicial officer's decision. *An error in KDOR's decision does not impact its jurisdiction to make it. And the KDOR and the courts are not somehow deprived of that jurisdiction because the DC-27 was insufficient*. In discussing subject matter jurisdiction over criminal complaints, the Supreme Court has noted that 'even prejudicial deficiencies in due process or notice do not render the outcome of a prosecution void for lack of subject matter jurisdiction.' *Dunn*, 304 Kan. at 814. Accordingly, we find that the KDOR had subject matter jurisdiction to suspend Sandate's driver's license." (Emphasis added.) *Sandate*, 58 Kan. App. 2d at 455.

As the *Sandate* panel noted, one Kansas Court of Appeals panel is not bound by another panel's decision. 58 Kan. App. 2d at 461; see *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018). Moreover, another panel of our court has considered a nearly identical claim, absent the jurisdictional argument, but directly rejecting the notion that completion of paragraphs 9, 10, and 11 necessarily results in a false certification when the driver does not fail the breath test but refuses testing.

In *Rolfingsmeier v. Kansas Dept. of Revenue*, No. 103,770, 2011 WL 1877802, at *2 (Kan. App. 2011) (unpublished opinion), the driver refused a breath test and argued the officer's completion of all the paragraphs on the DC-27 form—including paragraphs 9, 10, and 11—"falsely certified that Rolfingsmeir had both refused a breath test and

failed a breath test." The panel disagreed and found the driver's interpretation of K.S.A. 8-1002(a) was inaccurate because he "wrongly believes that paragraphs 9, 10, and 11 can be completed if, and only if, the officer is certifying a test failure. The statute provides no such restriction." 2011 WL 1877802, at *4. Of particular relevance, the panel added:

"Because [the officer] was certifying a test refusal, the statute did not require him to complete paragraphs 9, 10, and 11 of the DC-27 form. However, the statute did not prohibit him from doing so, either. There is no language in K.S.A. 8-1002(a) stating that an officer may not complete paragraphs 9, 10, and 11 when certifying a test refusal." 2011 WL 1877802, at *4.

We are convinced the KDOR and district court had jurisdiction to consider Vance's claims that his license privileges were improperly suspended. *Sandate* is dispositive of this issue. The statute does not prohibit an officer from completing paragraphs 9, 10, and 11 of the DC-27 form whenever a driver refuses a test. Deputy Blake's completion of these paragraphs was unnecessary under the circumstances of Vance's failure to submit to a urine test but the surplusage was not false or misleading. As a result, the completion of those paragraphs did not render the certification meaningless and noncompliant with K.S.A. 2018 Supp. 8-1002, such that KDOR or the district court was deprived of jurisdiction.

REASONABLE SUSPICION TO MAKE THE TRAFFIC STOP

Vance contends Deputy Blake did not have reasonable suspicion to initiate the traffic stop because there was no improper turn and Deputy Blake's testimony shows "he had no reasonable suspicion or pretextual traffic violation to make his stop lawful." The KDOR responds by reprising the district court's conclusion of law that Deputy Blake had a valid basis for stopping Vance's vehicle.

9

The district court concluded: "Petitioner made an improper turn, traveled slower than the posted speed limit, repeatedly braked for no reason, and switched lanes without signaling. This provided an objectively valid reason for conducting the stop." As noted by the district court, "[a] traffic violation provides an objectively valid reason for conducting a traffic stop." *State v. Coleman*, 292 Kan. 813, 818, 257 P.3d 320 (2011) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 54 L. Ed. 2d 331 [1977]).

The district court's factual findings are supported by substantial competent evidence. On the DC-27 form, Deputy Blake noted that Vance committed the traffic violation by making an improper turn. Deputy Blake confirmed this violation in his district court testimony. Additionally, the deputy also detailed the other reasons he began following Vance, including testifying that Vance was traveling slower than the posted speed limit, braking for no apparent reason, and failing to use his turn signal.

Deputy Blake's testimony and the DC-27 form support the district court's legal conclusion that the deputy had an objectively valid reason for conducting the traffic stop—violations of the traffic laws. See *Coleman*, 292 Kan. at 818.

PROBABLE CAUSE TO ARREST FOR DUI

Vance challenges the basis for Deputy Blake's DUI arrest. Vance asserts several complaints regarding the deputy's handling of the DUI arrest and concludes: "In total, there is an inference of arbitrary, discriminatory, and use of biased based [p]olice [p]rocedures."

"The determination of whether an officer has reasonable grounds for a particular action involves a mixed question of law and fact, and appellate courts review the ultimate legal conclusion—whether reasonable grounds existed—independently, while deferring to the district court's factual findings that are supported by substantial competent

10

evidence." *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, Syl. ¶ 1, 442 P.3d 1038 (2019). See *State v. Johnson*, 297 Kan. 210, 221, 301 P.3d 287 (2013) ("Whether reasonable grounds exist to believe a person has been operating a vehicle while under the influence of alcohol is a question of law."); *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012) (appellate courts generally review district court decisions in driver's license suspension cases to determine whether supported by substantial competent evidence).

The district court made detailed findings of fact that support its conclusion that Deputy Blake had probable cause to arrest Vance for DUI. In particular, the district court noted Vance's bloodshot eyes, difficulty in communicating, the odor of alcohol, his failure to successfully complete the field sobriety tests, his .088 breath sample reading after taking the PBT, poor driving, the time of day (1:57 a.m.); and Vance's apparent lies to Deputy Blake at the scene. Upon our independent review of the record, these findings are supported by substantial competent evidence.

"Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *Johnson*, 297 Kan. at 222 (citing *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 [2012]). We are persuaded that that the district court's conclusion of law that Deputy Blake had probable cause to arrest Vance for DUI was supported by substantial competent evidence.

Vance does not challenge the factual findings made by the district court. But he highlights evidence that conflicts with these findings. For example, Vance testified he did poorly on field sobriety tests that revealed balance and coordination difficulties because he was the victim of a serious gunshot wound. But the district court found that Vance did not inform Deputy Blake of these circumstances at the scene, so the officer was unable to evaluate this claim in arriving at his probable cause determination. On the other hand,

11

Deputy Blake testified that when he asked Vance "if there was anything keeping him from walking a straight line," Vance "said 'no.'"

While some evidence presented in the district court was controverted, the court made detailed findings of fact, and "[a]ppellate courts do not reweigh evidence" or "resolve evidentiary conflicts." *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1122 (2014).

Vance's claims that Deputy Blake's DUI investigation was discriminatory, biased, or contrary to proper police procedures is not shown in the evidentiary record. As the party making the claim and petitioning for review, the burden is on Vance to designate a record sufficient to present his points and establish his claims. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). Quite simply, Vance fails to support his assertions, while the record on appeal substantiates the district court's conclusion of law that Deputy Blake had probable cause to arrest Vance for DUI.

On a related issue, Vance also asserts the district court erred when it found that he refused to provide a urine sample for drug analysis as requested by Deputy Blake. Vance testified that he was unable to comply with the request because he had urinated in the bathroom shortly before the request was made. This claim was challenged by Deputy Blake.

The district court found that Vance had "the burden to prove that [Vance] did not refuse the urine test but rather was physically incapable of complying. [Vance] did not meet that burden" and the court found that Vance "refused to submit to the urine test." As explained by the district court, this factual finding was based on the "'trial court's disbelief of evidence'" based on the appearance, manner, and demeanor of the witness.

Similarly, Vance challenges whether Deputy Blake provided the requisite statutory notice prior to the officer's request for a urine sample. As recounted by the district court,

12

Vance "testified that he did not recall an advisory being read regarding the urine test." On the other hand, Deputy Blake testified that he did inform Vance of the proper advisory notice. The district court resolved this factual discrepancy in favor of KDOR's legal position, stating "[Vance's] testimony is damaged by a lack of credibility. . . . [Vance] did not meet his burden of proof to show that he never received proper notice." Upon our review, we find no error in the district court's finding that Deputy Blake provided the statutory advisory notice to Vance at the time he requested a urine sample.

"'In determining whether substantial competent evidence supports the district court's findings, appellate courts must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it.'" *Casper*, 309 Kan. at 1220; see also *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 414, 233 P.3d 286 (2010) ("[W]e do not consider other evidence that might support a different result as long as sufficient evidence supports the district court's decision."). Nor will this court reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

We conclude that Vance has not met his burden to prove his many assertions, and that substantial competent evidence supports the district court's factual and legal findings.

CONSTITUTIONALITY OF K.S.A. 2018 SUPP. 8-1001(a)-(b)(1)

For the first time on appeal, Vance raises a constitutional claim that was not raised in his petition for review or in the district court. Vance contends that K.S.A. 2018 Supp. 8-1001(a)-(b)(1) should be held "[u]nconstitutionally [v]ague based on overbreadth." Although Vance's argument is unclear, he claims that the overbreadth of this statute adversely affects his right to a fair criminal trial in the event his test refusal is used in the criminal prosecution of his DUI charge.

13

As noted by the KDOR, Vance is raising this constitutional claim for the first time on appeal. But constitutional grounds for reversal asserted for the first time on appeal are not properly before our court for review. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014). Vance also does not argue an exception to the general rule that precludes our review of this issue. See *In re Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008) (stating three exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal). Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35) requires an appellant to explain why an issue was not raised below but should be considered for the first time on appeal. In *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018), our Supreme Court warned that this rule is strictly enforced and litigants who fail to comply risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned.

Because Vance raises this constitutional claim for the first time on appeal and does not argue any exception to justify our consideration of the issue despite its lack of preservation, we find the issue is waived or abandoned. Accordingly, we decline to consider this constitutional issue.

Affirmed.